**EXHIBIT B**

In the
# CIRCUIT COURT
## of St. Louis County, Missouri

For File Stamp Only

FILED

OCT 1 4 2026

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

David Murray
Plaintiff(s)

10-14-2026
Date

vs.

26SL-CC06693
Case Number

Raymond James & Associates
Defendant(s)
Raymond James Financial

21
Division

Amended Petition:
Declaratory Judgement, Equitable Relief, Tortious Interference with business Expectancies, Damages, and other relief.

**SO ORDERED**

David Murray
~~Attorney~~ prose
Bar No.

12337 Lakepoint Drive Maryland Heights 6304
Address

636-373-0552
Phone No. Fax No.

Judge

Attorney Bar No.

**ENTERED:** ______________________
(Date)

Address

CCOPR47-WS Rev. 02/14

Phone No. Fax No.

# TABLE OF AUTHORITIES

*Authorities cited in the accompanying Verified Petition. Page references are to the Petition's original page numbers.*

## MISSOURI STATUTES


| Authority | Subject | Petition page(s) |
|---|---|---|
| Mo. Rev. Stat. § 408.040 | Interest | 27 |
| Mo. Rev. Stat. § 509.050 | Pleading; damages demand | 20 |
| Mo. Rev. Stat. § 510.261 | Punitive damages | 26 |
| Mo. Rev. Stat. § 516.100 | Accrual; capable of ascertainment | 1, 13 |
| Mo. Rev. Stat. § 516.120(4) | Five-year limitations period | 13 |
| Mo. Rev. Stat. §§ 527.010, 527.020, 527.040 | Declaratory judgment | 1, 3 |
| Mo. Rev. Stat. § 527.080 | Supplemental relief | 3, 16, 27 |
| Mo. Rev. Stat. § 527.090 | Jury trial in declaratory actions | 26 |
| Mo. Rev. Stat. § 527.100 | Costs | 27 |
| Mo. Rev. Stat. § 508.010 | Venue | 3 |


## MISSOURI CASES


| Authority | Subject | Petition page(s) |
|---|---|---|
| Bishop & Assocs., LLC v. Ameren Corp., 520 S.W.3d 623 (Mo. banc 2017) | Improper means / justification | 18 |
| Carter v. Curators of the Univ. of Mo., No. WD87975 (Mo. App. W.D. Aug. 4, 2026) | Continuing wrong vs. continuing damages | 13 |
| D'Arcy & Assocs., Inc. v. KPMG Peat Marwick, L.L.P., 129 S.W.3d 25 (Mo. App. W.D. 2004) | Tortious-interference limitations period | 13 |
| Hensen v. Truman Med. Ctr., Inc., 62 S.W.3d 549 (Mo. App. W.D. 2001) | Employment expectancy | 17 |
| Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576 (Mo. banc 2006) | Capable of ascertainment | 1, 14 |
| Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247 (Mo. banc 2006) | Tortious interference | 17, 19 |
| Western Blue Print Co. v. Roberts, 367 S.W.3d 7 (Mo. banc 2012) | Business expectancy / justification / improper means | 17, 18 |


## FEDERAL / OTHER PERSUASIVE CASES


| Authority | Subject | Petition page(s) |
|---|---|---|
| Green v. Fidelity Invs., 374 F. App'x 573 (6th Cir. 2010) | U5 causation evidence | 22 |
| J.P. Morgan Sec. LLC v. Luckett, No. 3:22-cv-00137-RGJ (W.D. Ky. Sept. 15, 2023) | U5; prospective employment; damages | 21 |
| Rosenberg v. MetLife, Inc., 453 F.3d 122 (2d Cir. 2006), certified question answered, 8 N.Y.3d 359 (2007) | Form U5 privilege | 22, 23 |


## FINRA AUTHORITIES

| Authority | Subject | Petition page(s) |
|---|---|---|
| FINRA Form U5 Instructions (Rev. May 2009) | Form U5; amendments | 5, 14, 30 |
| FINRA By-Laws art. V, § 3(b) | U5 amendment obligation | 5, 14, 30 |
| FINRA Rules 1210–1240 / Qualification and Registration Requirements FAQ | Registration framework | 5, 11 |
| FINRA Rules 12206, 13206; Regulatory Notice 26-06 (Mar. 2, 2026) | Six-year arbitration eligibility | — |
| FINRA BrokerCheck, Morgan Keegan & Co., LLC, CRD No. 4161 | Firm history | 2, 30 |
| FINRA BrokerCheck, Raymond James & Associates, Inc., CRD No. 705 | Firm registration identity | 2 |
| In re Arbitration Between Diana Marie Petersen v. Raymond James Fin. Servs., Inc., FINRA Arb. No. 17-02974 (Sept. 13, 2019) | U5; tortious interference; damages | 21 |
| In re Arbitration Between Eduard Van Raay v. Raymond James Fin. Servs., Inc. & Raymond James Fin. Servs. Advisors, Inc., FINRA Arb. No. 11-04544 (July 16, 2012) | U5 amendment/expungement | 21 |
| In re Arbitration Between Theodore Adam Pavlovich v. Raymond James & Assocs., Inc. & Mark Kevan Mekler, FINRA Arb. No. 11-01696 (Jan. 4, 2013) | Adverse U5/interference precedent | 22 |

## SEC FILINGS

| Authority | Subject | Petition page(s) |
|---|---|---|
| Raymond James Fin., Inc., Current Report (Form 8-K), Item 2.01 (Apr. 2, 2012) | Morgan Keegan acquisition | 2, 6, 15, 30 |
| Raymond James Fin., Inc., Annual Report (Form 10-K) (Sept. 30, 2013) | February 2013 integration into RJA | 6, 15, 30 |
| Raymond James Fin., Inc., Quarterly Report (Form 10-Q) (June 30, 2013) | Transfer of client accounts to RJA | 15, 30 |

*Persuasive U5 authorities are cited for comparison and evidentiary guidance only; they are not represented as controlling Missouri law.*

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

**DAVID MURRAY,**
Plaintiff,

v.

**MORGAN KEEGAN & COMPANY, LLC;**
**RAYMOND JAMES & ASSOCIATES, INC.; and**
**RAYMOND JAMES FINANCIAL, INC.,**
Defendants.

Case No. 26SL-CC06693

**VERIFIED PETITION FOR DECLARATORY JUDGMENT, EQUITABLE RELIEF, TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES, DAMAGES, AND OTHER RELIEF**

**JURY DEMAND**

Plaintiff David Murray ("Plaintiff"), appearing pro se, for his Verified Petition against Defendants Morgan Keegan & Company, LLC ("Morgan Keegan"), Raymond James & Associates, Inc. ("RJA"), and Raymond James Financial, Inc. ("RJF") (collectively, "Defendants"), states as follows:

# I. INTRODUCTION

1. This action concerns a historical Form U5 filing that has continued to affect Plaintiff's professional life and ability to pursue securities-industry employment for approximately two decades.
2. Plaintiff does not ask this Court to function as a securities regulator or to direct FINRA concerning matters within FINRA's independent regulatory authority.
3. Plaintiff instead seeks determination of present rights and legal relationships between Plaintiff and Defendants concerning a historical Form U5, including which Defendant presently possesses, controls, maintains, or has authority concerning the filing and related records.[1]
4. Plaintiff also seeks relief for Defendants' present and continuing conduct, including their refusal, after receiving actual notice from Plaintiff, to identify the responsible entity, produce the historical records, or take corrective action within their legal authority concerning a filing that Plaintiff contends inaccurately characterizes a non-securities, non-customer, personal matter.[2]
5. The continuing professional consequences are demonstrated by specific employment opportunities pursued by Plaintiff during the applicable limitations period, including a 2025 Financial Consultant opportunity with Fidelity Investments, 2026 opportunities with New York Life and Synergy Financial, and a 2026 Citi Wealth Investment Sales Senior Lead/Senior Vice President opportunity involving FINRA securities qualifications. Plaintiff contends that the historical Form U5 materially impaired these opportunities and his ability to obtain securities-industry employment. Plaintiff will rely upon application records, communications, background-review information, employer records, and other discovery to establish causation and damages. As of September 2026, the Citi application remained in recruiting review; Plaintiff does not allege that Citi rejected him. These recent employment opportunities are alleged as specific business and employment expectancies affected during the applicable limitations period, not merely as evidence of consequences from the original event.

1. Mo. Rev. Stat. §§ 527.010, 527.020, 527.040 (2026) (declaratory-judgment jurisdiction and declaration of rights). 2. See Mo. Rev. Stat. § 516.100 (2026) (accrual when damage is sustained and capable of ascertainment); Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582–83 (Mo. banc 2006); Hensen v. Truman Med. Ctr., Inc., 62 S.W.3d 549, 553–54 (Mo. App. W.D. 2001) (employment expectancy); J.P. Morgan Sec. LLC v. Luckett, No. 3:22-cv-00137-RGJ (W.D. Ky. Sept. 15, 2023) (U5-related prospective-employment evidence); FINRA, Form U5 Instructions (Amendment Form U5 procedures).

6. The present controversy is important because the Form U5 continues to have professional consequences and because Plaintiff has presented Defendants with an opportunity to address those consequences.

7. Plaintiff's claims therefore do not depend upon transforming a twenty-year-old defamation claim into a timely claim.

8. Plaintiff does not assert a standalone claim for defamation, libel, slander, or injurious falsehood arising solely from the original filing.

9. Instead, Plaintiff seeks declaratory and equitable relief concerning present legal relationships and asserts a timely tortious-interference claim based upon specific recent employment expectancies and Defendants' present conduct concerning the continuing professional effect of the Form U5.

10. Plaintiff further seeks damages proximately caused by actionable conduct occurring within the applicable limitations period, together with such other damages as Missouri law permits and the evidence establishes.

---

# II. PARTIES

1. Plaintiff David Murray is an individual residing in St. Louis County, Missouri.

2. Plaintiff has more than twenty years of experience in banking, financial services, investment advisory, regulatory oversight, audit, compliance, vendor management, and related financial-services functions.

3. Plaintiff has previously worked in financial-advisor and investment-related positions and has held FINRA and insurance licenses.

4. Plaintiff currently holds securities-related qualifications including Series 63 and Series 65 and has previously held Series 7 and Series 31 registrations.

5. Defendant Morgan Keegan & Company, LLC is the legal entity presently associated with the historical Morgan Keegan CRD No. 4161 record.

6. FINRA's current firm information identifies Morgan Keegan & Company, LLC, CRD No. 4161, as a previously registered brokerage firm whose registration terminated in 2016.

7. Defendant Raymond James & Associates, Inc. is a Raymond James broker-dealer and investment-advisory entity, FINRA CRD No. 705.

8. Defendant Raymond James Financial, Inc. is the parent company of the Raymond James enterprise and acquired Morgan Keegan in 2012.

---

3. FINRA BrokerCheck identifies Morgan Keegan & Company, LLC, CRD No. 4161, as a previously registered brokerage firm, with registration terminated May 6, 2016. See FINRA, BrokerCheck, Morgan Keegan & Co., LLC, CRD No. 4161.

4. Raymond James Financial, Inc. reported that it completed its acquisition of all outstanding shares of Morgan Keegan & Company, Inc. on April 2, 2012. See Raymond James Fin., Inc., Current Report (Form 8-K), Item 2.01 (Apr. 2, 2012).

9. Plaintiff presently lacks complete information concerning the precise allocation among Defendants of responsibility for Plaintiff's historical Form U5, the underlying personnel records, the historical CRD record, and the authority to submit or request an amendment.

10. Those facts are particularly within Defendants' knowledge and control.

11. Plaintiff therefore pleads the respective responsibilities of Defendants in the alternative to the extent necessary and requests discovery concerning the corporate, contractual, regulatory, and recordkeeping relationships among them.

# III. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over Plaintiff's Missouri-law claims and declaratory-relief claims pursuant to Missouri law.

2. Missouri's Declaratory Judgment Act authorizes a person whose rights, status, or legal relations are affected by a statute, contract, or other legally cognizable relationship to obtain a declaration of rights and legal relations. RSMo §527.020.

3. Missouri law further authorizes supplemental relief when necessary or proper following declaratory relief. RSMo §527.080.

4. An actual and present controversy exists because:

a. Plaintiff's historical Form U5 remains relevant to securities-industry employment;

b. Plaintiff has requested corrective action and identification of the responsible entity;

c. RJA has stated that it cannot amend the U5 or support Plaintiff's request;

d. RJA subsequently stated that it has no relevant records because of the passage of time;

e. Plaintiff continues to pursue employment opportunities in financial services; and

f. the parties presently disagree concerning the legal and practical responsibility for the historical filing and related records.

1. Venue is proper in St. Louis County because Plaintiff resides here, the effects of the challenged conduct have been suffered here, Plaintiff has pursued employment opportunities from Missouri, and a substantial portion of the controversy and resulting damages is connected to Missouri.

---

5. Mo. Rev. Stat. ßß 527.010, 527.020, 527.040 (2026). Section 527.010 states that circuit courts may declare rights, status, and legal relations; ß 527.040 addresses when a person may obtain a declaration.
6. Mo. Rev. Stat. ß 527.080 (2026) (supplemental relief may be granted when necessary or proper).
7. Mo. Rev. Stat. ß 508.010 (2026) (venue rules for civil actions). Plaintiff's specific venue allegations remain subject to proof and any applicable defendant-specific venue rules.

# IV. THE UNDERLYING MATTER WAS NOT A CUSTOMER OR SECURITIES-INDUSTRY MATTER

1. Plaintiff was formerly associated with Morgan Keegan.

2. Upon Plaintiff's termination, Morgan Keegan filed a Form U5 concerning Plaintiff.

3. The Form U5 contains the termination explanation including the phrase "conversion of funds."

4. The historical matter underlying that language was not a securities transaction.[8]

5. It did not involve the purchase or sale of securities.

6. It did not involve investment advice.

7. It did not involve management or custody of customer securities.

8. It did not involve a securities-industry customer transaction.

9. The person involved in the underlying dispute was not a Morgan Keegan customer of Plaintiff.

10. The underlying matter was personal in nature and did not arise from Plaintiff's performance of securities-industry functions.

11. Plaintiff was not arrested as a result of the matter.

12. Plaintiff was not criminally charged.

13. Plaintiff was not convicted of a crime arising from the matter.

14. Plaintiff further alleges that the complainant in the underlying personal dispute was not a securities customer and was not a participant in a securities transaction involving Plaintiff.

15. Plaintiff does not contend that the mere use of the word[9] "conversion" establishes criminal conduct.

16. Rather, Plaintiff contends that the wording of the U5, when read in the context in which the underlying event actually occurred, creates a materially misleading professional impression because it places a personal, non-securities matter within the permanent regulatory-history system used to evaluate securities professionals.

17. The distinction is material.

8. The factual assertions concerning the underlying event are pleaded allegations and should be supported by Exhibit C and the underlying records. No external authority is cited for the facts themselves.
9. This pleading distinction is intended to avoid characterizing the U5 language as a criminal conviction or adjudication; the actual U5 and underlying records control.

18. A prospective securities employer reviewing Plaintiff's CRD history does not necessarily have the historical context necessary to understand that the underlying matter was personal and unrelated to securities activity.

19. The resulting disclosure therefore has consequences materially different from those that would reasonably be expected from a truthful description of a securities-industry termination event.

---

# V. THE FORM U5 AND ITS PROFESSIONAL EFFECT

1. Form U5 is the Uniform Termination Notice for Securities Industry Registration.

2. FINRA's Form U5 procedures provide for amendments to[10] previously filed U5 information.

3. FINRA's materials further recognize that member firms reviewing an applicant for registration must review the applicant's most recent Form U5,[11] including amendments, and take appropriate action.

4. Thus, the Form U5 is not merely a historical employment document.

5. It is part of the regulatory information reviewed when a securities professional seeks registration with another FINRA member.

6. The professional consequence is especially significant for an individual whose career includes securities registration and whose employment opportunities depend upon a broker-dealer's willingness to sponsor or maintain such registration.

7. Plaintiff's experience demonstrates the practical significance of the filing.

8. Plaintiff alleges that, following the Morgan Keegan termination, the U5 became a recurring obstacle to his efforts to obtain or maintain securities-industry employment.

9. Plaintiff has pursued numerous opportunities over the years in which background, compliance, licensing, registration, or U5 review was relevant.

10. Plaintiff does not allege that every employment rejection over the past twenty years was necessarily caused by the U5.

11. Instead, Plaintiff will identify through documents, testimony, discovery, and employer communications those opportunities in which the U5, CRD record, securities-registration history, or related compliance review materially affected the employment decision.

12. This distinction is important because Plaintiff seeks to prove causation through evidence rather than assumption.

---

10. FINRA, Form U5 Instructions (Rev. May 2009), states that specified U5 fields, including the Reason for Termination and Termination Explanation, may be amended; see also FINRA By-Laws art. V, ß 3(b) (member-firm amendment obligation when information becomes inaccurate or incomplete).
11. FINRA, Qualification and Registration Requirements FAQ, explaining the registration framework under FINRA Rules 1210∑1240; see also FINRA Form U4/U5 reporting framework.

# VI. RAYMOND JAMES ACQUIRED MORGAN KEEGAN

1. On April 2, 2012, Raymond James Financial, Inc. completed its[12] acquisition from Regions Financial Corporation of all issued and outstanding shares of Morgan Keegan & Company, Inc. and related entities.

2. Morgan Keegan thereafter became part of the Raymond James corporate enterprise.

3. Raymond James's own SEC filings describe the transaction and subsequent integration.

4. In mid-February 2013,[13] Raymond James reported that Morgan Keegan's financial advisors and client accounts were transferred to the Raymond James & Associates platform.

5. Raymond James subsequently reported that 863 Morgan Keegan financial advisors became[14] Raymond James & Associates financial advisors as part of the integration.

6. The corporate history therefore demonstrates substantial legal and operational integration between the Morgan Keegan business and the Raymond James enterprise.

7. At the same time, Plaintiff does not presently allege that RJA is automatically the legal successor to every liability, record, obligation, or responsibility of Morgan Keegan.

8. The present issue requires a more precise determination.

9. FINRA's current firm record identifies Morgan Keegan & Company, LLC under CRD No. 4161 and identifies it as no longer registered.

10. Plaintiff's historical U5 was filed under the Morgan Keegan regulatory identity associated with CRD No. 4161.

11. The evidence therefore raises a concrete question[15] concerning the relationship between:

a. Morgan Keegan & Company, Inc., the original filing entity;

b. Morgan Keegan & Company, LLC, the continuing entity associated with CRD No. 4161;

c. Raymond James & Associates, Inc., which received the active Morgan Keegan business and financial-advisor relationships; and

d. Raymond James Financial, Inc., which acquired Morgan Keegan.

1. Plaintiff is entitled to discovery concerning which entity presently possesses or controls the historical U5 and the records supporting it.

---

12. Raymond James Fin., Inc., Current Report (Form 8-K), Item 2.01 (Apr. 2, 2012), reporting completion of the acquisition from Regions Financial Corporation of all issued and outstanding shares of Morgan Keegan & Company, Inc. and MK Holding, Inc.

13. Raymond James Fin., Inc., Annual Report (Form 10-K) (Sept. 30, 2013), reporting that in February 2013 Raymond James completed the transfer of client accounts from Morgan Keegan & Co. to Raymond James & Associates and thereafter operated retained historical Morgan Keegan operations under the RJA platform.

14. Raymond James Fin., Inc., Annual Report (Form 10-K) (Sept. 30, 2013), describing the February 2013 integration of 863 retained Morgan Keegan financial advisors into Raymond James & Associates.

15. The SEC filings establish acquisition and operational integration, but they do not by themselves establish which entity presently owns or controls Plaintiff's particular historical U5. That issue is expressly pleaded for discovery.

# VII. PRESENT NOTICE TO RAYMOND JAMES

1. Plaintiff previously sought relief concerning the historical U5 and provided Raymond James with actual notice of the dispute.

2. Plaintiff sent written correspondence to Raymond James by certified mail.[16]

3. The correspondence was delivered and received.

4. Plaintiff's correspondence identified the historical Form U5 and requested corrective action.

5. Plaintiff's notice placed Raymond James on actual notice that Plaintiff disputed the accuracy and continuing professional effect of the historical filing.

6. The correspondence is attached as Exhibit E.

# VIII. RAYMOND JAMES'S APRIL 29, 2026 POSITION

1. On April 29, 2026, Raymond James advised Plaintiff that it did not intend to participate in the hearing[17] concerning FINRA's motion in Plaintiff's prior proceeding.

2. Plaintiff does not contend that this communication constitutes an admission concerning the accuracy of the U5.

3. Plaintiff pleads the communication because it establishes that Raymond James had actual notice of Plaintiff's dispute and the underlying proceeding.

4. The communication is attached as Exhibit F.

# IX. MAY 29, 2026 REQUEST AND RAYMOND JAMES'S RESPONSE

1. On May 29, 2026, Plaintiff requested that Raymond James address the historical U5.

2. Raymond James & Associates responded that it did not have evidence establishing that the U5 disclosure[18] Plaintiff sought to expunge was incorrect.

3. Raymond James further stated that, as a result, it could not amend the U5 or support Plaintiff's request for expungement.

16. Exhibit E is the pleaded documentary basis for delivery and notice; the Court may determine the legal effect of that notice after review of the exhibit.
17. Exhibit F is pleaded as evidence of notice only. Plaintiff expressly disclaims treating the communication as an admission concerning U5 accuracy.
18. Exhibit G is pleaded as evidence of Raymond James's stated position; Plaintiff does not plead the statement as an admission that the U5 was either accurate or false.

4. Plaintiff does not plead this statement as an admission that the U5 was accurate.

5. Nor does Plaintiff characterize the statement as an admission that the U5 was false.

6. Instead, the statement establishes three important facts:

a. Raymond James had actual notice of Plaintiff's challenge;

b. Raymond James declined to amend the filing; and

c. Raymond James did not identify the entity possessing the historical evidence necessary to evaluate the disputed filing.

1. The May 29, 2026 correspondence is attached as Exhibit G.

---

# X. JUNE 12, 2026 STATEMENT THAT RAYMOND JAMES HAD NO RELEVANT RECORDS

1. On June 12, 2026, Raymond James advised Plaintiff that, because of the amount of time that had passed since Morgan Keegan's termination of Plaintiff's employment, Raymond James had no relevant records to provide.

2. Plaintiff pleads this communication as evidence of Raymond James's present position concerning the availability of historical records.

3. Plaintiff does not plead that the absence of records establishes that the U5 was inaccurate.

4. The communication instead demonstrates why discovery is necessary.

5. If the historical records were destroyed, transferred, retained by another Raymond James entity, or maintained elsewhere, the identity of the responsible custodian is material to this action.

6. The June 12, 2026 correspondence is attached as Exhibit H.[19]

---

# XI. PRIOR ST. LOUIS COUNTY PROCEEDING

1. Plaintiff previously commenced an action concerning the historical U5.

2. That proceeding included claims and issues concerning FINRA and the availability of expungement.

19. Exhibit H is pleaded as evidence of the stated record-availability position. The absence of records, standing alone, does not establish the accuracy or inaccuracy of the U5.

3. FINRA asserted, among other things, that FINRA Rule 2080 does not provide FINRA authority to expunge employment-termination information in the circumstances presented by Plaintiff.

4. The prior proceeding was dismissed without prejudice.

5. The prior proceeding did not adjudicate, on the merits, whether the historical U5 was accurate.

6. It did not adjudicate whether Defendants presently possess or control the historical U5.

7. It did not adjudicate Plaintiff's present employment expectancies.

8. It did not adjudicate the specific recent employment opportunities identified in this Petition.

9. It did not adjudicate Defendants' present conduct following Plaintiff's 2026 requests.

10. It therefore does not resolve the present controversy alleged here.

11. Copies of the relevant pleadings and orders from the prior proceeding are attached as Exhibit I.

---

# XII. SPECIFIC RECENT EMPLOYMENT EXPECTANCIES

1. Plaintiff has continued to seek financial-services employment[20] despite the historical U5.

2. These efforts are not speculative.[21]

3. Plaintiff has applied for specific positions for which he possessed substantial relevant experience and qualifications.

4. Plaintiff's qualifications include more than twenty years of banking and financial-services experience, regulatory oversight, audit and compliance experience, investment advisory experience, vendor-management experience, and prior securities-industry experience.

5. Plaintiff has also held or currently holds securities-related licenses and qualifications relevant to financial-services employment.

## A. STATE FARM SALES LEADER OPPORTUNITY

1. Plaintiff pursued a Sales Leader opportunity with State Farm.[22]

2. The position represented a substantial professional opportunity with compensation that Plaintiff reasonably understood could approach approximately $200,000 annually.

20. The legal effect of the prior proceeding is governed by the actual docket, orders, and disposition attached as Exhibit I.
21. Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 251–52 (Mo. banc 2006) (probable future business relationship giving rise to a reasonable expectancy of financial benefit can satisfy the expectancy element).
22. See Western Blue Print Co. v. Roberts, 367 S.W.3d 7, 19–21 (Mo. banc 2012) (business expectancy need not arise from an existing contract, but must be reasonable and supported by evidence).

3. On January 16, 2026, State Farm representative Andi Wilson informed Plaintiff that he had advanced to the final step[23] of the approval process, identified as the "Leadership in Action" interview.

4. This communication demonstrates that Plaintiff was not merely submitting an application into an anonymous applicant pool.

5. He had advanced to a specific later stage of the hiring process.

6. Plaintiff subsequently paused or refrained from proceeding because he anticipated the background, compliance, and securities-history review that could expose the historical U5.

7. Plaintiff does not allege that State Farm expressly rejected him because of the U5 unless subsequent discovery establishes that fact.

8. Instead, Plaintiff pleads the State Farm opportunity as evidence of a concrete employment expectancy and the professional barrier created by the historical regulatory disclosure.

9. The January 16, 2026 communication is attached as Exhibit J.

---

## B. FIDELITY FINANCIAL CONSULTANT OPPORTUNITY

1. Plaintiff also pursued a Financial Consultant opportunity with Fidelity.

2. The position represented an employment opportunity with compensation that Plaintiff reasonably estimated at approximately $150,000 annually.

3. The opportunity was directly related to Plaintiff's financial-services experience.

4. Plaintiff will rely upon application records, communications, compliance-review records, and any available employer documentation to establish the extent to which the historical U5 affected this opportunity.

5. Relevant Fidelity documentation[24] is attached collectively as Exhibit K.

## C. NEW YORK LIFE AND SYNERGY FINANCIAL

1. Plaintiff also pursued opportunities with New York Life and Synergy Financial[25] during 2026.

2. These positions involved financial-services activities for which Plaintiff's professional history and securities-related background were relevant.

3. Plaintiff alleges that the historical U5 was a material barrier to these opportunities.

---

23. Exhibit J is the pleaded documentary support for the State Farm hiring-stage allegation. Plaintiff expressly does not allege that State Farm rejected him because of the U5.
24. Exhibit K is the pleaded documentary source. The Petition preserves causation as an evidentiary issue rather than assuming that an application necessarily would have resulted in employment.
25. Exhibit L is the pleaded documentary source. The Petition alleges these opportunities but reserves proof of causation for documents, testimony, and discovery.

4. Plaintiff will rely upon the underlying application records, communications, background-review information, and testimony to establish causation and damages.

5. Relevant records are attached collectively as Exhibit L.

## XIII. CITI WEALTH INVESTMENT-SALES OPPORTUNITY

1. Plaintiff applied on June 22, 2026, for a Citi Wealth Investment Sales Senior Lead/Senior Vice President opportunity.

2. The posted primary-location salary range[26] was approximately $176,720 to $265,080 annually.

3. The position required or materially relied upon securities-industry qualifications,[27] including FINRA Series 7 and related securities licenses.

4. As of September 2026, Plaintiff's application remained in a recruiting-review status.

5. Plaintiff therefore does not allege that Citi rejected him.

6. Instead, Plaintiff pleads the Citi opportunity because it demonstrates the continuing professional significance of the U5 and the economic value of positions for which Plaintiff's securities-industry registration history is material.

7. The Citi posting and application records are attached as Exhibit M.

---

## XIV. THE FORM U5'S PRACTICAL EFFECT ON REGISTRATION-DEPENDENT EMPLOYMENT

1. Plaintiff's claim does not depend upon the proposition that the U5 legally makes registration impossible.

2. Rather, Plaintiff alleges that the U5 materially affects whether a prospective FINRA member will sponsor,[28] register, employ, or approve Plaintiff for a securities-industry position.

3. FINRA's registration framework specifically contemplates review of prior U5 information by prospective member firms.

4. The existence of a U5 disclosure therefore creates a regulatory-compliance issue that a prospective employer must evaluate.

---

26. Exhibit M is the pleaded source for the Citi posting, compensation range, qualifications, and application status. The Petition expressly does not allege that Citi rejected Plaintiff.
27. FINRA, Qualification and Registration Requirements FAQ, explaining the registration framework under FINRA Rules 1210–1240; the particular Citi posting controls the factual qualification requirements alleged here.
28. FINRA, Qualification and Registration Requirements FAQ (FINRA Rules 1210–1240); FINRA Form U5 procedures recognize the regulatory significance of termination information in the registration system.

5. Where the disclosure concerns a matter unrelated to securities activity, the disclosure may cause a prospective employer to expend additional compliance resources,[29] investigate the matter, or decline to sponsor the applicant.

6. Plaintiff's experience is consistent with the practical importance of that review.

7. Plaintiff will establish through discovery and testimony the specific instances in which employers reviewed, questioned, or acted upon the U5.

---

# XV. PLAINTIFF'S QUALIFICATIONS AND MITIGATION

1. Plaintiff has not remained idle.

2. Plaintiff has continued to work in financial services and related fields.

3. Plaintiff has pursued positions in banking, financial advisory, compliance, audit, regulatory oversight, investment services, and related areas.

4. Plaintiff has continued to maintain relevant professional qualifications.

5. Plaintiff's career demonstrates substantial earning capacity independent of the disputed U5.

6. Plaintiff's employment history and compensation records will be used to establish his historical earning capacity and the economic value of securities-industry employment.

7. Plaintiff has attempted to mitigate his damages[30] by pursuing employment opportunities outside the most restrictive securities-registration roles when necessary.

8. Such mitigation does not eliminate the economic consequences of being prevented or impaired from pursuing opportunities for which Plaintiff was otherwise qualified.

9. Plaintiff's resume, license history, employment history, and compensation documentation are attached collectively as Exhibit N.

# XVI. THE PRESENT CONTROVERSY IS NOT LIMITED TO THE ORIGINAL 20-YEAR-OLD EVENT

1. Plaintiff recognizes that Missouri law generally requires tort claims to be brought within the applicable limitations period.

---

29. This is pleaded as a practical inference to be supported by employer testimony and records; the Petition does not treat it as an automatic legal consequence of every U5.
30. Missouri damages principles generally require proof of causation and reasonable certainty; Plaintiff pleads mitigation as a factual issue to be supported by employment and compensation records.

2. Plaintiff does not ask the Court to disregard the statute of limitations.

3. Plaintiff also does not rely solely upon the proposition that continuing economic consequences automatically constitute a continuing tort.

4. Missouri law distinguishes between[31] a completed historical wrong and later consequences resulting from that wrong.

5. Plaintiff's present claims are based upon present facts and recent events.

6. Those events include:

a. Defendants' present possession, control, or legal responsibility concerning the historical U5;

b. Defendants' present refusal to identify the responsible entity;

c. Defendants' present refusal to amend or support correction of the U5;

d. Defendants' stated inability or refusal to produce the historical records;

e. Plaintiff's recent employment applications and expectancies;

f. the continuing regulatory significance of the U5 in evaluating securities-industry applicants; and

g. specific employment opportunities occurring within the applicable limitations period.

1. Plaintiff therefore seeks recovery for actionable conduct and damages occurring within the applicable limitations period and does not seek to circumvent Missouri's limitations law by simply relabeling an old defamation claim.

---

# XVII. STATUTE OF LIMITATIONS

1. Missouri RSMo §516.100 provides that[32] a cause of action accrues when damage is sustained and capable of ascertainment.

2. RSMo §516.120 generally provides a five-year limitations period for actions involving injury to rights not otherwise specifically enumerated.

3. Missouri appellate authority recognizes a five-year limitations period for[33] tortious-interference claims. See D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P., 129 S.W.3d 25, 29 (Mo. App. W.D. 2004).

4. Plaintiff's tortious-interference claim is not based exclusively upon the original filing of the Form U5 approximately twenty years ago.

---

31. See Carter v. Curators of the Univ. of Mo., No. WD87975, slip op. (Mo. App. W.D. Aug. 4, 2026) (distinguishing a continuing wrong from continuing damages flowing from a completed wrong).
32. Mo. Rev. Stat. ß 516.100 (2026) provides that accrual occurs when resulting damage is sustained and capable of ascertainment.
33. Mo. Rev. Stat. ß 516.120(4) (2026) applies a five-year period to injury to rights not otherwise enumerated; D'Arcy & Assocs., Inc. v. KPMG Peat Marwick, L.L.P., 129 S.W.3d 25, 29–30 (Mo. App. W.D. 2004), applied the five-year period to tortious interference.

5. Instead, Plaintiff alleges recent interference with identifiable business and employment expectancies and recent conduct by Defendants after receiving actual notice of Plaintiff's dispute.

6. Plaintiff's recent employment opportunities occurred within the limitations period.

7. Plaintiff's present controversy concerning Defendants' responsibilities and authority concerning the historical U5 is also current.

8. Plaintiff therefore alleges facts sufficient to place the timeliness of the present claims before the Court without relying upon an impermissible attempt to revive a stale defamation claim.

9. If Defendants contend that any particular item of alleged damage accrued earlier than Plaintiff alleges, Plaintiff requests an opportunity for discovery concerning the date on which the particular damage became capable of ascertainment[34] and the conduct giving rise to that damage.

---

# XVIII. FORM U5 AUTHORITY AND AMENDMENT

1. FINRA's own materials recognize an "Amendment Form U5"[35] used to update or amend disclosure information, date of termination, reason for termination, and related information concerning a previously terminated individual.

2. FINRA also provides a mechanism for member firms to submit U5 amendments.

3. Plaintiff therefore seeks discovery concerning which Defendant has authority, responsibility, access, or ability to initiate such an amendment with FINRA.

4. Plaintiff does not ask this Court to assume FINRA's regulatory function.

5. Plaintiff asks the Court to determine the rights and responsibilities of the parties before it and to require each Defendant to take such corrective steps as the Court determines are within that Defendant's lawful authority.

---

# XIX. CORPORATE SUCCESSION AND RECORD RESPONSIBILITY

1. The public corporate record establishes that RJF acquired Morgan Keegan & Company, Inc. in 2012.

2. Raymond James subsequently integrated the Morgan Keegan private-client business into RJA.

3. The historical Form U5, however, remains associated with the Morgan Keegan regulatory identity.

---

34. Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582–83 (Mo. banc 2006) (discussing when damage becomes capable of ascertainment for limitations purposes).
35. FINRA, Form U5 Instructions (Rev. May 2009); FINRA By-Laws art. V, § 3(b) (member firms must amend a Form U5 when they learn facts causing information in the notice to become inaccurate or incomplete).

4. The present record therefore raises a factual and legal question concerning the identity of the entity that presently possesses, controls, maintains, or has authority concerning Plaintiff's historical U5.

5. Plaintiff cannot reasonably be expected to plead facts concerning agreements that Defendants have not disclosed.

6. Those documents may include:

a. the January 11, 2012 Stock Purchase Agreement;[36]

b. schedules concerning assumed and excluded liabilities;

c. agreements concerning employee liabilities;

d. agreements concerning regulatory records;

e. agreements concerning retention or transfer of Morgan Keegan records;

f. documents concerning the transfer of Morgan Keegan's active business to RJA;[37]

g. communications with FINRA concerning historical CRD records;

h. policies governing U5 amendments;

i. records concerning Plaintiff's termination; and

j. records concerning the current custodian of Plaintiff's historical U5.

1. Plaintiff therefore seeks discovery sufficient to identify the legally responsible entity.

---

# XX. COUNT I — DECLARATORY JUDGMENT

**RSMo §§527.010 et seq.**

1. Plaintiff incorporates paragraphs 1 through 178 as though fully stated herein.

2. An actual controversy exists between Plaintiff and Defendants concerning Plaintiff's rights and Defendants' responsibilities regarding the historical Form U5.

3. Plaintiff has a present interest in resolving that controversy because the U5 remains professionally relevant.

4. Plaintiff seeks a declaration concerning:

---

36. Raymond James's April 2, 2012 Form 8-K identifies the January 11, 2012 Stock Purchase Agreement as the governing acquisition agreement. The pleading seeks the agreement and schedules because the public SEC filing does not resolve all assumed/excluded liability questions.
37. Raymond James's 2013 Form 10-K and Form 10-Q report the February 2013 transfer of client accounts and retained historical Morgan Keegan operations to the RJA platform.

a. the identity of the entity presently possessing, controlling, maintaining, or having legal authority concerning the historical Form U5;

b. the respective responsibilities of Morgan Keegan, RJA, and RJF concerning historical Morgan Keegan records;

c. the identity of the entity presently possessing or controlling the records supporting the U5;

d. the identity of the entity authorized to request or submit an amendment concerning the U5;

e. whether any Defendant has a continuing legal or contractual responsibility concerning the accuracy or maintenance of the historical filing;

f. whether Defendants have the ability and authority to seek corrective action concerning the filing; and

g. such other present rights and legal relations as are necessary to resolve the controversy.

1. Plaintiff further requests supplemental equitable relief under RSMo §527.080[38] requiring the responsible Defendant or Defendants to take those corrective actions within their lawful authority that the Court determines are necessary to give effect to the Court's declaration.

2. Plaintiff does not request that this Court usurp FINRA's regulatory authority.[39]

3. Plaintiff instead requests relief against the parties before this Court concerning their own legal responsibilities and actions.

---

# XXI. COUNT II — TORTIOUS INTERFERENCE WITH BUSINESS AND EMPLOYMENT EXPECTANCIES

1. Plaintiff incorporates paragraphs 1 through 185.

2. Missouri recognizes a claim for tortious interference where a plaintiff establishes:

a. a valid business expectancy;

b. defendant's knowledge of the relationship or expectancy;

c. intentional interference inducing or causing the loss or disruption of the relationship or expectancy;

d. absence of justification; and

---

38. Mo. Rev. Stat. ß 527.080 (2026).
39. The requested relief is framed against the parties to this action and their own legal responsibilities; Plaintiff does not request an order directing FINRA.

e. resulting damages.

1. See Stehno v. Sprint Spectrum,[40] L.P., 186 S.W.3d 247, 250-52 (Mo. banc 2006); Western Blue Print Co. v.[41] Roberts, 367 S.W.3d 7, 19-21 (Mo. banc 2012).

## A. Valid Business Expectancies

1. Plaintiff possessed identifiable employment expectancies, including opportunities with State Farm, Fidelity, New York Life, Synergy Financial, Citi, and other financial-services employers.

2. Plaintiff's State Farm opportunity advanced to a final approval stage, including a Leadership in Action interview.

3. Plaintiff's Fidelity opportunity involved a financial-consultant position consistent with his professional qualifications.

4. Plaintiff's Citi opportunity involved a senior wealth/investment-sales position requiring or materially relying upon FINRA securities qualifications.

5. These are more than abstract hopes.

6. Plaintiff possessed substantial experience and qualifications relevant to the positions.

7. The specific applications, communications, and hiring-stage records demonstrate actual relationships with prospective employers.

8. Missouri law recognizes that an employment relationship or prospective employment relationship may constitute a valid business expectancy where the evidence establishes a reasonable expectation of economic benefit. See Hensen v. Truman Med. Ctr.,[42] Inc., 62 S.W.3d 549, 553-54 (Mo. App. W.D. 2001).

## B. Defendants' Knowledge

1. Defendants knew or should have known that Plaintiff's securities-industry employment opportunities depended upon the regulatory history maintained through FINRA's CRD system.

2. Defendants knew or should have known that the historical U5 was relevant to prospective securities-industry employers.

3. By May and June 2026, Defendants had actual notice that Plaintiff was challenging the historical disclosure and that it was affecting his professional opportunities.

## C. Intentional Interference

1. Plaintiff alleges that Defendants, after receiving actual notice, intentionally declined to correct, amend, clarify, or otherwise address the historical filing despite Plaintiff's requests.

---

40. Stehno v. Sprint Spectrum, L.P., 186 S.W.3d 247, 250–53 (Mo. banc 2006). The Missouri Supreme Court identifies the elements of tortious interference and discusses justification and expectancy.
41. Western Blue Print Co. v. Roberts, 367 S.W.3d 7, 19–22 (Mo. banc 2012).
42. Hensen v. Truman Med. Ctr., Inc., 62 S.W.3d 549, 553–54 (Mo. App. W.D. 2001) (employment relationship as basis for tortious-interference claim).

2. Plaintiff further alleges that Defendants continued to exercise, or failed to relinquish, control over the information or records concerning the historical U5.

3. To the extent discovery establishes that a particular Defendant possessed authority to correct, amend, clarify, or otherwise address the filing and intentionally declined to do so without adequate justification, such conduct constitutes actionable interference.

4. Plaintiff further alleges that the continued maintenance or authorization of an inaccurate or materially misleading professional disclosure, after notice and where correction was legally and practically available, interfered with Plaintiff's prospective employment relationships.

5. Plaintiff will establish the causal relationship between the disclosure and particular employment decisions through employer records, compliance communications, witness testimony, background-review records, CRD records, and other discovery.

## D. Absence of Justification[43]

1. Plaintiff recognizes that Defendants may have legitimate regulatory interests in maintaining accurate Form U5 information.

2. Plaintiff does not contend that Defendants are required to erase truthful regulatory information merely because it is unfavorable.

3. Plaintiff instead alleges that Defendants lack justification for continuing to maintain or refuse to correct information that discovery establishes was materially inaccurate, misleading, incomplete, or unrelated to securities-industry conduct.

4. Plaintiff further alleges that where Defendants possess no evidence supporting the disputed characterization, while simultaneously declining to identify the responsible entity or produce the underlying records, their conduct requires judicial examination rather than automatic deference.

5. Missouri law recognizes that where a defendant has a legitimate economic interest in an expectancy, a plaintiff may establish lack of justification through improper means. Western Blue Print, 367 S.W.3d at 20.

6. Improper means may include independently wrongful conduct[44] such as misrepresentation or other recognized wrongful conduct. Id.

7. Plaintiff therefore alleges that, to the extent the evidence establishes material misrepresentation, knowing maintenance of materially inaccurate information, or other independently wrongful conduct, the justification element is satisfied.

## E. Damages

1. Plaintiff has suffered and continues to suffer economic harm as a result of interference with his professional opportunities.

---

43. Western Blue Print, 367 S.W.3d at 20–21; see also Bishop & Assocs., LLC v. Ameren Corp., 520 S.W.3d 623, 629–30 (Mo. banc 2017) (improper means include independently wrongful conduct such as misrepresentation).
44. Western Blue Print, 367 S.W.3d at 20–21.

2. Such damages include,[45] as supported by the evidence:

a. lost compensation;

b. diminished earning opportunities;

c. lost bonuses and commissions;

d. lost securities-industry career opportunities;

e. diminished professional earning capacity;

f. expenses incurred pursuing alternative employment;

g. licensing and professional expenses;

h. other consequential economic losses proximately caused by the actionable conduct; and

i. other damages permitted by Missouri law.

1. Plaintiff will prove damages through employment records, compensation histories, job postings, applications, communications, tax records, payroll records, and expert or other appropriate evidence if necessary.

---

# XXII. HISTORICAL LOSSES AS EVIDENCE AND DAMAGES

1. Plaintiff's career history over approximately twenty years is relevant to the present claim.

2. Plaintiff does not contend that every employment opportunity lost during that period independently constitutes a timely tort claim.

3. Instead, the historical evidence demonstrates:[46]

a. the professional importance of the U5;

b. Plaintiff's earning capacity;

c. the nature of the career path Plaintiff otherwise pursued;

d. the repeated need for securities-industry registration;

45. Missouri tort law requires proof that the claimed damages resulted from the interference; see Stehno, 186 S.W.3d at 250∑53.
46. The Petition distinguishes evidence relevant to causation, background, and earning capacity from damages that may be independently recoverable for time-barred events.

e. the professional consequences associated with the disclosure;

f. the causal relationship between the disclosure and present employment barriers; and

g. the economic value of the career opportunities affected.

1. Plaintiff will distinguish between damages that are legally recoverable under the applicable limitations period and historical evidence offered to establish causation, background, professional significance, and earning capacity.

---

# XXIII. THE $700,000-PLUS DAMAGES THEORY

1. Plaintiff presently estimates that the aggregate economic consequences[47] associated with the actionable interference and related professional impairment exceed $700,000.

2. That estimate is not based upon the assumption that every position Plaintiff sought would necessarily have been obtained.

3. Plaintiff will instead calculate damages using evidence concerning:

a. compensation actually offered or reasonably documented;

b. probability of employment based on hiring-stage evidence;[48]

c. duration of employment opportunities;

d. compensation differentials between available employment and employment actually obtained;

e. lost bonuses, commissions, and incentives;

f. career progression;

g. securities-registration-dependent compensation;

h. professional earning capacity;

i. mitigation; and

j. the economic effect of the disputed disclosure.

1. Plaintiff specifically recognizes that speculative damages are not recoverable.

---

47. Mo. Rev. Stat. ß 509.050.1 (2026) prohibits a pleading from stating a dollar amount in the prayer for relief except for jurisdictional purposes; the Petition therefore seeks fair and reasonable damages in the prayer.
48. The damages theory is pleaded as an evidentiary methodology rather than an assertion that every application would have resulted in employment.

2. Plaintiff therefore intends to support his damages with documentary evidence and testimony rather than simply asking the Court or jury to assume that every rejected application would have resulted in employment.

3. A preliminary damages analysis is attached as Exhibit T and will be supplemented through discovery.

4. Plaintiff reserves the right to amend or supplement his damages calculation as additional employment, compensation, registration, and CRD evidence becomes available.

---

# XXIV. THE J.P. MORGAN SECURITIES v. LUCKETT DECISION

1. Plaintiff recognizes that decisions from other jurisdictions are not controlling Missouri authority.

2. Nevertheless, J.P. Morgan Securities LLC v. Luckett,[49] No. 3:22-cv-00137-RGJ (W.D. Ky. Sept. 15, 2023), provides persuasive evidence that a securities-industry claimant can establish a substantial employment-related damages claim where evidence demonstrates that a Form U5 affected specific prospective employment opportunities.

3. In Luckett, the record included testimony[50] that a prospective employer had scheduled a start date but ultimately could not approve the individual's hiring after reviewing his Form U5.

4. The court confirmed a $1.4 million arbitration award that included damages and a recommendation concerning the U5.

5. Plaintiff does not contend that Luckett controls this Court.

6. Plaintiff cites it because it demonstrates the evidentiary distinction[51] between a speculative allegation that a U5 harmed a career and concrete evidence connecting a U5[52] to identified employment opportunities.

7. Plaintiff intends to present the latter.

---

# XXV. GREEN v. FIDELITY — WHY SPECIFIC CAUSATION MATTERS

1. Plaintiff also recognizes the significance of Green v. Fidelity Investments, 374 F. App'x 573 (6th Cir. 2010).

---

49. J.P. Morgan Sec. LLC v. Luckett, No. 3:22-cv-00137-RGJ, slip op. (W.D. Ky. Sept. 15, 2023) (confirming a $1.4 million FINRA arbitration award and noting a Form U5-related recommendation). The decision is persuasive only, not controlling Missouri authority.

50. Luckett, No. 3:22-cv-00137-RGJ, slip op. at 3 (W.D. Ky. Sept. 15, 2023) (discussing evidence concerning prospective employment and Form U5 review).

51. In re Arbitration Between Diana Marie Petersen v. Raymond James Fin. Servs., Inc., FINRA Arb. No. 17-02974 (Sept. 13, 2019) (award included $360,000 compensatory damages and a recommendation concerning the claimant's Form U5).

52. In re Arbitration Between Eduard Van Raay v. Raymond James Fin. Servs., Inc. & Raymond James Fin. Servs. Advisors, Inc., FINRA Arb. No. 11-04544 (July 16, 2012) (settlement followed by recommendation to expunge/amend U5 termination information).

2. In Green,[53] the plaintiff's prospective-employment interference claim failed because the plaintiff relied primarily upon his own assertions and did not present sufficient probative evidence connecting the Form U5 to the alleged employment losses.

3. Plaintiff's Petition is structured differently.

4. Plaintiff identifies specific employment opportunities and intends to obtain objective evidence concerning:

a. hiring-stage communications;

b. compliance review;

c. background checks;

d. registration review;

e. U5/CRD review;

f. employer decision-making; and

g. compensation.

1. Plaintiff pleads these facts specifically so that the case may be determined on evidence rather than inference alone.

---

# XXVI. FORM U5 PRIVILEGE DOES NOT RESOLVE THE PRESENT CLAIMS AS A MATTER OF PLEADING

1. Plaintiff anticipates that Defendants may rely upon cases such as Rosenberg v. MetLife, Inc.,[54] 8 N.Y.3d 359 (2007), which addressed privilege applicable to Form U5 statements under New York law.

2. Rosenberg is not controlling [55] Missouri authority.

3. Plaintiff does not plead a standalone defamation claim.

4. Plaintiff instead pleads present declaratory and equitable controversies and a tortious-interference claim governed by Missouri law.

5. Missouri law requires examination of the actual gravamen and elements of the pleaded claim rather than merely attaching a different label to an otherwise barred defamation action.

---

53. Green v. Fidelity Invs., 374 F. App'x 573 (6th Cir. 2010) (per curiam). The Petition cites Green as a caution that conclusory assertions of U5-related employment harm may be insufficient without probative causation evidence.
54. Rosenberg v. MetLife, Inc., 453 F.3d 122, 128–29 (2d Cir. 2006), certified question answered, 8 N.Y.3d 359, 866 N.E.2d 439 (2007). Rosenberg addressed New York-law privilege for Form U5 statements and is not controlling Missouri law.
55. The Raymond James U5 cases should be treated as persuasive factual authorities, not as Missouri precedents. See also In re Arbitration Between Theodore Adam Pavlovich v. Raymond James & Assocs., Inc. & Mark Kevan Mekler, FINRA Arb. No. 11-01696 (Jan. 4, 2013) (adverse outcome for claimant alleging, among other things, U5-related interference; useful as counterprecedent).

6. Plaintiff's interference claim includes conduct beyond the historical publication itself, including Defendants' present control, refusal to correct or address the information after notice,[56] and interference with specific present employment expectancies.

7. Plaintiff therefore requests that any privilege defense[57] be considered in light of the actual conduct alleged and the evidence developed through discovery.

---

# XXVII. WHAT THIS CASE IS NOT

1. This is not a criminal expungement proceeding.

2. Plaintiff is not asking this Court to erase a criminal conviction.

3. Plaintiff has no criminal conviction arising from the underlying matter.

4. This is not a challenge to FINRA's general regulatory authority.

5. This is not an attempt to require FINRA to disregard its rules.

6. This is not a claim that every adverse employment decision Plaintiff experienced during the last twenty years was caused by the U5.

7. This is not a request for damages based solely upon a twenty-year-old publication.

8. This is not a request for the Court to assume facts not supported by evidence.

9. This is a present civil controversy concerning the continuing legal and professional consequences of a historical regulatory filing, Defendants' present responsibilities concerning that filing, and specific recent employment opportunities allegedly affected by the filing.

# XXVIII. DISCOVERY IS NECESSARY

1. Plaintiff has made reasonable efforts to obtain information voluntarily.

2. Defendants have not provided the historical records necessary to determine:

a. what information Morgan Keegan possessed when it filed the U5;

b. who authorized the wording;

c. what investigation preceded the filing;

---

56. The Petition pleads these as distinct present acts and expressly does not assert a standalone defamation claim arising solely from the original filing.
57. Rosenberg, 8 N.Y.3d at 364–68 (2007) (New York-law privilege); its applicability to a Missouri tort claim and to conduct occurring after the original filing is a legal issue for the Court.

d. what documentation supported the filing;

e. whether any internal review occurred;

f. whether the matter was determined to involve securities activity;

g. whether the underlying complainant was a customer;

h. what records were transferred to Raymond James;

i. what records were retained by Morgan Keegan;

j. which entity presently controls the records;

k. which entity presently has authority to amend the filing; and

l. what communications occurred concerning Plaintiff's U5 after the Raymond James acquisition.

1. Plaintiff therefore requests discovery from Defendants concerning the above matters.

---

# XXIX. PRESERVATION OF EVIDENCE

1. Plaintiff requests that Defendants preserve all documents and electronically stored information relating to:

a. Plaintiff;

b. Plaintiff's Morgan Keegan employment;

c. Plaintiff's termination;

d. the Form U5;

e. any amendment or proposed amendment;

f. the underlying complaint or allegation;

g. the investigation of the underlying matter;

h. the payment of restitution;

i. Morgan Keegan's acquisition by Raymond James;

j. transfer of Morgan Keegan employees and business to RJA;

k. historical CRD records;

l. communications with FINRA concerning Plaintiff;

m. communications with Plaintiff;

n. communications concerning Plaintiff's employment applications;

o. compliance or background reviews concerning Plaintiff; and

p. policies concerning historical Form U5 records.

1. Plaintiff specifically requests preservation of electronically stored information, email, text messages, internal messaging systems, document-management systems, personnel files, compliance files, legal files, CRD-related records, and archived records reasonably likely to contain responsive information.

---

# XXX. EQUITABLE RELIEF

1. Plaintiff seeks equitable relief because monetary damages alone cannot fully resolve the present controversy concerning who possesses or controls the historical U5 and who has authority to address it.

2. Plaintiff requests an order requiring the responsible Defendant or Defendants to:

a. identify the legal entity presently responsible for the historical U5;

b. identify the custodian of the underlying records;

c. produce the relevant historical records[58] subject to appropriate confidentiality protections;

d. identify the legal authority under which the U5 is presently maintained;

e. identify whether Defendants possess authority to submit an amended Form U5;

f. if the Court determines that the filing is materially inaccurate or misleading,[59] take all lawful steps within their authority to submit an appropriate corrective amendment to FINRA; and

g. provide such other equitable relief as necessary to effectuate the Court's judgment.

1. Plaintiff does not request an order requiring FINRA to take an action beyond its independent authority.

---

58. The discovery and equitable requests are tied to the present controversy over custody, control, authority, and records. The Petition does not assume the identity of the proper custodian.
59. The requested corrective relief is expressly conditioned on the Court's determination and limited to steps within a defendant's lawful authority; no order is requested directly against FINRA.

# XXXI. ATTORNEYS' FEES AND COSTS

1. Plaintiff is appearing without counsel.

2. Plaintiff therefore does not presently seek attorney fees incurred by counsel.

3. Plaintiff seeks taxable court costs and any other costs recoverable under applicable law.

4. Plaintiff reserves the right to seek other relief if authorized by statute, contract, or other applicable law.

---

# XXXII. PUNITIVE DAMAGES RESERVED

1. Plaintiff does not include a punitive-damages demand in this initial Petition.

2. Plaintiff reserves the right, after discovery, to seek leave under RSMo §510.261[60] to amend the Petition if the evidence establishes a legally sufficient basis for punitive damages.

3. Plaintiff will comply with all statutory requirements governing any future request for punitive damages.

# XXXIII. JURY DEMAND

1. Plaintiff demands a trial by jury[61] on all issues triable to a jury, including Plaintiff's tortious-interference claim and the factual issues underlying the damages claim.

---

# XXXIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Murray respectfully requests that the Court:

A. Enter judgment declaring the present rights, status, and legal relationships of the parties concerning Plaintiff's historical Form U5;

B. Determine which Defendant presently possesses, controls, maintains, or has legal responsibility concerning Plaintiff's historical Form U5;

C. Determine which Defendant possesses or controls the records underlying the historical filing;

---

60. Mo. Rev. Stat. ß 510.261 (2026) governs punitive damages and requires compliance with its pleading and evidentiary requirements.
61. Mo. Rev. Stat. ß 527.090 (2026) recognizes jury trial in declaratory-judgment actions when the right exists; Plaintiff separately demands a jury on triable tort and damages issues.

D. Determine which Defendant has authority to request, submit, or otherwise pursue an amendment or correction of the historical Form U5;

E. Order the responsible Defendant or Defendants to identify and produce the relevant historical records, subject to lawful confidentiality protections;

F. Grant supplemental equitable relief[62] under RSMo §527.080;

G. If the evidence establishes that the historical Form U5 contains materially inaccurate or misleading information, order the responsible Defendant or Defendants to take all corrective steps within their lawful authority, including submitting an appropriate amendment to FINRA;

H. Enter judgment in favor of Plaintiff on his claim for tortious interference with business and employment expectancies;

I. Award Plaintiff compensatory damages in such amount as is fair and reasonable and supported by the evidence;

J. Award all other damages and consequential losses recoverable under Missouri law and proven at trial;

K. Award prejudgment and post-judgment interest[63] to the extent authorized by law;

L. Award Plaintiff his taxable costs;[64]

M. Grant such other legal and equitable relief as the Court determines is just and proper; and

N. Grant a jury trial on all issues triable to a jury.

Respectfully submitted,

**DAVID MURRAY**
Plaintiff, Pro Se

Address: 12337 Lakepoint Drive Maryland Heights MO 6304

Telephone: 636-373-0552
Email: mr.dmurray

Date: 10-2-2026

62. Mo. Rev. Stat. ß 527.080 (2026).
63. Any interest award is subject to the requirements and limitations of Missouri law, including Mo. Rev. Stat. ß 408.040 where applicable.
64. See Mo. Rev. Stat. ß 527.100 (2026) (costs in declaratory-judgment proceedings), together with other applicable Missouri cost provisions.

# VERIFICATION

I, David Murray, being first duly sworn upon my oath, state that I am the Plaintiff in the foregoing action; that I have read the foregoing Verified Petition; that I know the contents thereof; and that the factual allegations contained therein are true and correct to the best of my personal knowledge, information, and belief, except those matters expressly stated upon information and belief, as to which I believe the allegations to be true.

David Murray [signature]

Subscribed and sworn before me this 2 day of Oct, 2026.

Notary Public Rachael Andrews [signature]

My commission expires: 01/26/2030

RACHEL ANDREWS
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Jan. 26, 2030
Commission # 17706186

# EXHIBIT INDEX

**Exhibit A — Historical Form U5**

Complete copy of Plaintiff's Form U5, including all pages, disclosures, termination reason, termination explanation, amendments, and any associated disclosure-reporting pages.

**Exhibit B — Historical and Current CRD/BrokerCheck Records**

Plaintiff's CRD/BrokerCheck documentation showing the historical Morgan Keegan association, U5 disclosure, registration history, and current relevant record.

**Exhibit C — Underlying Morgan Keegan Matter**

Available documentation concerning the underlying personal matter, including any complaint, correspondence, investigation, termination documentation, or related records.

**Exhibit D — Restitution Documentation**

Documentation concerning the approximately $5,300 restitution/payment made in connection with the underlying matter, if available.

**Exhibit E — Plaintiff's Certified Notice to Raymond James**

Plaintiff's written demand/request concerning the U5 together with certified-mail receipt, delivery confirmation, and proof of receipt.

**Exhibit F — April 29, 2026 Raymond James Communication**

Raymond James communication concerning its decision not to participate in the prior FINRA-related hearing.

**Exhibit G — May 29, 2026 Raymond James Response**

Raymond James & Associates' response stating that it did not have evidence establishing that the U5 was incorrect and could not amend or support Plaintiff's request.

**Exhibit H — June 12, 2026 Raymond James Response**

Raymond James communication stating that it had no relevant records because of the passage of time.

**Exhibit I — Prior St. Louis County Proceeding**

Relevant pleadings, orders, motions, and disposition from Plaintiff's prior St. Louis County action concerning FINRA and the historical U5.

**Exhibit J — State Farm Employment Opportunity**

January 16, 2026 communication concerning Plaintiff's advancement to the Leadership in Action interview/ final approval stage.

**Exhibit K — Fidelity Employment Opportunity**

Application, job description, communications, compensation information, and other records concerning the Financial Consultant opportunity.

**Exhibit L — New York Life and Synergy Financial Opportunities**

Application records, communications, job descriptions, and other evidence concerning Plaintiff's 2026 opportunities with New York Life and Synergy Financial.

**Exhibit M — Citi Wealth Investment Sales Opportunity**

June 22, 2026 application, job posting, compensation range, qualification requirements, and recruiting-review documentation.

**Exhibit N — Plaintiff's Qualifications and Professional History**

Current resume, employment history, license history, Series 63/65 records, historical Series 7/31 records, insurance licenses, and other evidence of professional qualifications.

---

**Exhibit O — FINRA Form U5 Materials**[65]

Relevant FINRA materials concerning Form U5 filing, amendment procedures, and review of prior U5 information by prospective member firms.

**Exhibit P — Raymond James Acquisition Records**[66]

SEC filings documenting Raymond James Financial's April 2, 2012 acquisition of Morgan Keegan & Company, Inc.

**Exhibit Q — Raymond James Integration Records**[67]

SEC filings documenting the February 2013 transfer of Morgan Keegan's active financial-advisor and client-account business to Raymond James & Associates.

**Exhibit R — FINRA Morgan Keegan Firm Record**[68]

Current and historical FINRA firm information concerning Morgan Keegan & Company, LLC, CRD No. 4161.

**Exhibit S — Employment Opportunity Chronology**

Chronological schedule identifying Plaintiff's material employment opportunities, dates, positions, compensation, hiring stage, securities-registration requirements, and known U5/CRD involvement.

**Exhibit T — Damages Analysis**

Documentary damages analysis identifying, to the extent presently ascertainable, lost compensation, compensation differentials, lost opportunities, earning-capacity evidence, mitigation, and other recoverable economic damages.

**Exhibit U — Plaintiff's Employment and Compensation Records**

W-2s, compensation statements, offer letters, employment records, and other documentation supporting Plaintiff's historical and current earning capacity.

**Exhibit V — Additional Supporting Documents**

Any subsequent communications, employer records, CRD documents, discovery responses, or other evidence obtained after filing that materially supports Plaintiff's claims.

---

65. FINRA, Form U5 Instructions (Rev. May 2009); FINRA By-Laws art. V, ß 3(b).
66. Raymond James Fin., Inc., Current Report (Form 8-K), Item 2.01 (Apr. 2, 2012).
67. Raymond James Fin., Inc., Annual Report (Form 10-K) (Sept. 30, 2013); Quarterly Report (Form 10-Q) (June 30, 2013).
68. FINRA BrokerCheck, Morgan Keegan & Company, LLC, CRD No. 4161 (current firm record).

EXHIBIT A-B

**MORGAN KEEGAN & COMPANY, LLC(4161)**

**Individual Name: MURRAY, DAVID BRIAN (4328456)**

**Rev. Form U5 (06/2003)**

**U5 Amendment - Filing ID: 16333509**

**Filing Date: 10/27/2005**

# FORM U5
# UNIFORM TERMINATION NOTICE FOR SECURITIES INDUSTRY REGISTRATION

***NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING***

***Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.***

## 1. GENERAL INFORMATION

| | | | |
|---|---|---|---|
| **First Name:** DAVID | **Middle Name:** BRIAN | **Last Name:** MURRAY | **Suffix:** |
| ***Firm* CRD #:** 4161 | ***Firm* Name:** MORGAN KEEGAN & COMPANY, INC. | **CRD Branch #:** | ***Firm* NFA #:** |
| ***Firm* Billing Code:** SL SA17 | ***Individual CRD #*:** 4328456 | **Individual SSN:** xxx-xx-xxxx | **Individual NFA #:** |
| **Office of Employment Address Street 1:** 11920 NEW HALLS FERRY ROAD | | **Office of Employment Address Street 2:** | |
| **City:** ST. LOUIS | **State:** Missouri | **Country:** USA | **Postal Code:** 63303 |

Private Residence Check Box:

If the Office of Employment address is a private residence, check this box. ☐

## 2. CURRENT RESIDENTIAL ADDRESS

***NOTICE TO THE FIRM***

***This is the last reported residential address. If this is not current, please enter the current residential address.***

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 10/1995 | PRESENT | 16329 HAMPDEN PLACE | FLORISSANT | MO | US | 63034 |

## 7. DISCLOSURE QUESTIONS

IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U4 OR FORM U5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.

### Investigation Disclosure

| | | YES | NO |
|---|---|---|---|
| **7A.** | Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? (Note: Provide details of an *investigation* on an Investigation Disclosure Reporting Page and details regarding a *proceeding* on a Regulatory Action Disclosure Reporting Page.) | ○ | ◉ |

### Internal Review Disclosure

YES NO

**7B.** Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct? ○ ◉

### Criminal Disclosure

**YES NO**

**7C.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual:

**1.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*? ○ ◉

**2.** *charged* with any *felony*? ○ ◉

**3.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? ○ ◉

**4.** *charged* with a *misdemeanor* specified in 7(C)(3)? ○ ◉

### Regulatory Action Disclosure

**YES NO**

**7D.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual *involved* in any *disciplinary action* by a domestic or foreign governmental body or *self-regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses? ○ ◉

### Customer Complaint/Arbitration/Civil Litigation Disclosure

**YES NO**

**7E.** 1. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which:

**(a)** is still pending, or; ○ ◉

**(b)** resulted in an arbitration award or civil judgment against the individual, regardless of amount, or; ○ ◉

**(c)** was settled for an amount of $10,000 or more. ○ ◉

2. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated complaint, not otherwise reported under question 7(E)(1) above, which alleged that the individual was *involved* in one or more *sales practice violations*, and which complaint was settled for an amount of $10,000 or more? ○ ◉

3. In connection with events that occurred while the individual was employed or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7(E)(1) or 7(E)(2) above, which:

**(a)** would be reportable under question 14I(3)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or ◉ ○

**(b)** would be reportable under question 14I(3)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*. ○ ◉

### Termination Disclosure

**YES NO**

**7F.** Did the individual voluntarily *resign* from your firm, or was the individual discharged or permitted to *resign* from your firm, after allegations were made that accused the individual of:

**1.** violating *investment-related* statutes, regulations, rules or industry standards of conduct? ◉ ○

**2.** fraud or the wrongful taking of property? ○ ◉

**3.** failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct? ◯ ◉

## 8. SIGNATURE

Please Read Carefully

All signatures required on this Form U5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A. FIRM ACKNOWLEDGMENT
This section must be completed on all U5 form filings submitted by the *firm*.

8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT
This section must be completed on amendment U5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

## 8A. FIRM ACKNOWLEDGMENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

**Person to contact for further information**
JAMES T. RITT

**Telephone # of person to contact**
901-524-4165

**Signature of *Appropriate Signatory***
JAMES T. RITT

**Date** (MM/DD/YYYY)
10/26/2005

Type or Print Name of Appropriate Signatory ________________________

## 8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN SECTION 2 (CURRENT RESIDENTIAL ADDRESS) AND/OR IN PART II OF THE INTERNAL REVIEW DRP.

**Individual Signature**

**Date** (MM/DD/YYYY)

**Type or Print Name of Individual** ________________________

## INVESTIGATION DRP

No Information Filed

## INTERNAL REVIEW DRP

No Information Filed

## CRIMINAL DRP

No Information Filed

## TERMINATION DRP

This Disclosure Reporting Page is an ◯ **INITIAL OR** ◉ **AMENDED** response to report details for affirmative response to ***Question 7F*** on Form U5;

**Check question(s) you are responding to:**

**Termination**

☑ **7F(1)** ☐ **7F(2)** ☐ **7F(3)**

One event may result in more than one affirmative answer to the above items. Use only one DRP to report details related to the same termination. Use a separate DRP for each termination reported.

1. Firm Name:
   MORGAN KEEGAN & COMPANY, INC.

2. Termination Type:
   Discharged

3. Termination Date (MM/DD/YYYY):
   09/27/2005 ◉ **Exact** ○ **Explanation**
   If not exact, provide explanation:

4. Allegation(s):
   CONVERSION OF FUNDS

5. Principal Product Type:
   No Product
   Other Product Types:

6. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the termination. Your information must fit within the space provided.

**REGULATORY ACTION DRP**

No Information Filed

**CUSTOMER COMPLAINT/ARBITRATION/CIVIL LITIGATION DRP**

This Disclosure Reporting Page is an ○ **INITIAL OR** ◉ **AMENDED** response to report details for affirmative responses to ***Questions 7(E)(1), 7(E)(2) and 7(E)(3)*** on Form U5;

**Check question(s) you are responding to:**

**Customer Complaint/Arbitration/Civil Litigation**

☐ **7(E)(1)(a)** ☐ **7(E)(1)(b)** ☐ **7(E)(1)(c)** ☐ **7(E)(2)** ☑ **7(E)(3)(a)** ☐ **7(E)(3)(b)**

One event may result in more than one affirmative answer to the above items. Use only one DRP to report details related to one customer complaint/arbitration/civil litigation. Use a separate DRP for each customer complaint/arbitration/civil litigation.

DRP Instructions:

- In all matters (i.e., customer complaints, arbitrations/CFTC reparations, civil litigations), complete items 1-6.
- If the matter involves only a customer complaint, also complete items 7-12, as appropriate.
- If the customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.
- If the matter involves an arbitration or CFTC reparation, complete items 13-19, as appropriate.
- If the matter involves a civil litigation, complete items 20-27.
- Item 28 is an optional field and applies to all event types (i.e., customer complaint, arbitration/CFTC reparation/civil litigation).

Complete items 1-6 for all events.

1. Customer Name(s):
   NICOLE ALMONTE

2. Customer(s) State of Residence:
   Michigan
   Other state(s) of residence/detail:

3. Employing *Firm* when activities occurred which led to the complaint:
   MORGAN KEEGAN & COMPANY, INC.

4. Allegation(s) and a brief summary of events related to the allegation(s) including dates when activities leading to the allegation(s) occurred:
   CLAIM ALLEGES MISAPPROPRIATION OF FUNDS BY MORGAN KEEGAN BROKER.

5. Principal Product Type:
   No Product
   Other Product Types:

6. Alleged Compensatory Damage Amount: $ 5,000.00

**If the matter involves only a customer complaint, complete items 7-12, as appropriate.**

7. Date Customer Complaint was received (MM/DD/YYYY):
   09/23/2005 (●) **Exact** ( ) **Explanation**
   If not exact, provide explanation:

8. Is the customer complaint pending? ( ) **Yes** (●) **No**

**If the customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.**

9. If the customer complaint is not pending, provide status:
   If status is settlement, complete items 11 and 12;
   If status is arbitration/reparation, complete items 13-19;
   If status is litigation, complete items 20-27.

   ☐ **Closed/No Action** ☐ **Withdrawn** ☐ **Denied**
   ☑ **Settled** ☐ **Arbitration/Reparation** ☐ **Litigation**

10. Status Date (MM/DD/YYYY):
    10/12/2005 (●) **Exact** ( ) **Explanation**
    If not exact, provide explanation:

11. Settlement amount (if settled without arbitration, litigation or reparation): $ 5,235.53

12. Individual Contribution Amount: $ 0.00

**If the matter involves an arbitration or CFTC reparation, complete items 13-19, as appropriate.**

13. Arbitration/Reparation claim filed with (NASD, AAA, NYSE, CBOE, CFTC, etc.) and Docket/Case Number:

14. Date notice/process was served (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

15. Is the arbitration/reparation pending? ○ **Yes** ○ **No**

16. If the arbitration/reparation is not pending, what was the disposition?

17. Disposition Date (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

18. Amount of Monetary Compensation (award, settlement, reparation amount): $

19. Individual Contribution Amount: $

**If the matter involves a civil litigation, complete items 20-27.**

20. Court that case was filed in (include name of Federal, Military, State or Foreign Court, Location of Court - City or County and State or Country, Docket/Case number).

21. Date notice/process was served (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

22. Is the civil litigation pending? ○ **Yes** ○ **No**

23. If the civil litigation is not pending, what was the disposition?

24. Disposition Date (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

25. Amount of Monetary Compensation (judgment, restitution, settlement amount): $

26. Individual Contribution Amount: $

27. If the action is currently on appeal enter date appeal filed (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

28. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the customer complaint, arbitration/CFTC reparation and/or civil litigation as well as the current status or final disposition(s). Your information must fit within the space provided.

---

Exhibit B

https://brokercheck.finra.org/search/genericsearch/grid

PROVIDE FEEDBACK | BrokerCheck Help Line (800) 289-9999 Schedule a Call | FINRA Home

BrokerCheck by FINRA

INDIVIDUAL FIRM By clicking the SEARCH button or otherwise using BrokerCheck, I agree to BrokerCheck Terms of Use

Individual Name/CRD# (required): 4328456 at Firm Name or CRD/SEC# (optional) in City, State or ZIP (optional) SEARCH

Refine Results

No Results

We were unable to find any firms/individuals that matched the information you provided. You may want to try the following:

- Broaden or generalize your search criteria
- Check the spelling of your search terms. You may want to try entering only part of a name.
- Check that any CRD Numbers, SEC Numbers, or Zip Codes are valid.
- Ensure the individual or firm is registered with FINRA, the Securities and Exchange Commission (SEC), or a state securities regulator. Also, individuals are removed from BrokerCheck if they have been out of the industry for at least 10 years, except in cases where regulatory sanctions or criminal activity have occurred, in which case inclusion in BrokerCheck is permanent. Once registered, firms are included in BrokerCheck permanently even if its registration has lapsed or been revoked.
- Check the BrokerCheck Resources page on FINRA.org

**Only individuals and firms that are registered can sell securities to the public. Salespersons and firms may not conduct any securities business with public customers until all required registrations are in effect.**

Broker

A brokerage firm, also called a broker-dealer, is in the business of buying and selling securities – stocks, bonds, mutual funds, and certain other investment products – on behalf of its customer (as broker), for its own bank (dealer), or both. Individuals who work for broker-dealers - the sales personnel are commonly referred to as brokers.

Exhibit C — Underlying Morgan Keegan Matter Available documentation concerning the underlying personal matter, including any complaint, correspondence, investigation, termination documentation, or related records.

**No documentation provided**

Exhibit D

3. Employing *Firm* when activities occurred which led to the complaint:
   MORGAN KEEGAN & COMPANY, INC.

4. Allegation(s) and a brief summary of events related to the allegation(s) including dates when activities leading to the allegation(s) occurred:
   CLAIM ALLEGES MISAPPROPRIATION OF FUNDS BY MORGAN KEEGAN BROKER.

5. Principal Product Type:
   No Product
   Other Product Types:

6. Alleged Compensatory Damage Amount: $ 5,000.00

**If the matter involves only a customer complaint, complete items 7-12, as appropriate.**

7. Date Customer Complaint was received (MM/DD/YYYY):
   09/23/2005 (●) **Exact** ( ) **Explanation**
   If not exact, provide explanation:

8. Is the customer complaint pending? ( ) **Yes** (●) **No**

**If the customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.**

9. If the customer complaint is not pending, provide status:
   If status is settlement, complete items 11 and 12;
   If status is arbitration/reparation, complete items 13-19;
   If status is litigation, complete items 20-27.

| | | |
|---|---|---|
| ☐ **Closed/No Action** | ☐ **Withdrawn** | ☐ **Denied** |
| ☑ **Settled** | ☐ **Arbitration/Reparation** | ☐ **Litigation** |

10. Status Date (MM/DD/YYYY):
    10/12/2005 (●) **Exact** ( ) **Explanation**
    If not exact, provide explanation:

11. Settlement amount (if settled without arbitration, litigation or reparation): $ 5,235.53

** INBOUND NOTIFICATION : FAX RECEIVED SUCCESSFULLY **

| TIME RECEIVED | REMOTE CSID | DURATION | PAGES | STATUS |
| --- | --- | --- | --- | --- |
| July 29, 2025 at 6:31:25 PM CDT | 18882994271 | 311 | 7 | Received |

Jul 29, 2025 04:25 To: +13146158739 Page: 1/7 From: TBS Inc. Fax: 18882994271

Fax From SimpleScanStation 7/29/2025 18:20:21 Total Pages:7

# Fax

**To: ST. Louis County Circuit Court**

Fax Number: 13146158739

**From: David Murray**

FILED
JUL 30 2025
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

**Subject: 25SL - CC066407**

**Note:** Please attach documents to case # 25SL -CC066407 for up coming case

Exhibit E

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Raymond James & Assc.
ATTN: Legal Department
9900 Clayton Road Saint Louis MO 63124

9590 9402 9364 5002 7041 98

2. Article Number (Transfer from service label)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

USPS TRACKING #
SAINT LOUIS MO 630

9590 9402 9364 5002 7041 98

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

David Murray
12337 Lakepoint Drive
Maryland Heights MO 63043

Exhibit F

LR Laura Ruiz Rivera
To: me, Cc: Lauren, and 3 others · Fri, Jun 12 at 10.18 AM

On Wednesday, April 29, 2026 at 12:48:40 PM CDT, Laura Ruiz Rivera <laura.ruizrivera@raymondjames.com> wrote:

Mr. Murray,

Gianluca Morello forwarded the email below to me. Raymond James does not intend to participate in the hearing on FINRA's motion to dismiss.

Thanks,

Laura Ruiz Rivera
Senior Assistant General Counsel - Litigation
Raymond James Legal Department
T 727.567.4274 // F 866.205.4639 // raymondjames.com
880 Carillon Parkway, St. Petersburg, FL 33716
RAYMOND JAMES

The information transmitted is intended only for the person to whom or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, is prohibited. If you received this in error, please contact the sender and then delete and destroy all copies of the material. Thank you.

Exhibit G

LR

**Laura Ruiz Rivera**
To: me, Cc: Lauren, and 3 others · Fri, Jun 12 at 10:18 AM

**From:** David Murray <mr.dmurray@yahoo.com>
**Sent:** Friday, June 12, 2026 9:29 AM
**To:** Laura Ruiz Rivera <Laura.RuizRivera@RaymondJames.com>
**Cc:** Lauren Cantrell <Lauren.Cantrell@RaymondJames.com>; Madison Ghodsi <Madison.Ghodsi@RaymondJames.com>; Gianluca Morello <Gianluca.Morello@RaymondJames.com>; Taylor Doty <Taylor.Doty@RaymondJames.com>
**Subject:** Follow-Up Regarding Request for Information

Dear Laura,

I hope you are doing well.

I am following up regarding my request for any information or documentation Raymond James is willing to provide concerning the factual basis for the Form U5 disclosure language. I would appreciate any update you are able to share.

Thank you for your time and consideration.

Sincerely,

David Murray

On Tuesday, June 2, 2026 at 09:15:19 AM CDT, David Murray <mr.dmurray@yahoo.com> wrote:

## RE: Follow-Up Regarding Request for Information

Inbox

LR

**Laura Ruiz Rivera**
To: me, Cc: Lauren, and 3 others · Fri, Jun 12 at 10:18 AM

Mr. Murray,

Given the amount of time that has passed since Morgan Keegan's termination of your employment, Raymond James has no relevant records to provide.

Sincerely,
Laura

Laura Ruiz Rivera
Senior Assistant General Counsel - Litigation

Raymond James Legal Department
T 727.567.4274 // F 866.205.4639 // raymondjames.com
880 Carillon Parkway, St. Petersburg, FL 33716

**RAYMOND JAMES**

The information transmitted is intended only for the person to whom or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient or an employee or agent responsible for delivering this message to the intended recipient, is prohibited. If you received this in error, please contact the sender and then delete and destroy all copies of the material. Thank you.

Exhibit H

Laura Ruiz Rivera
To: me, Cc: Lauren, and 3 others · Fri, Jun 12 at 10:16 AM

and destroy all copies of the material. Thank you.

**From:** David Murray <mr.dmurray@yahoo.com>
**Sent:** Friday, May 29, 2026 9:16 AM
**To:** Laura Ruiz Rivera <Laura.RuizRivera@RaymondJames.com>
**Cc:** Lauren Cantrell <Lauren.Cantrell@RaymondJames.com>; Madison Ghodsi <Madison.Ghodsi@RaymondJames.com>; Gianluca Morello <Gianluca.Morello@RaymondJames.com>
**Subject:** Re: Successor in Interest

Dear Counsel,

I hope you are doing well.

I am following up regarding Raymond James' ongoing review of the concerns I previously raised relating to my Form U5 disclosure.

As you are aware, this matter has been under review for several months. Given the continuing impact the disclosure is having on my professional reputation and current employment opportunities, I would appreciate an update regarding the status of the review and anticipated timeline for resolution. As previously noted, the language reflected on the Form U5 continues to have significant implications for my professional reputation and employability within the financial services industry.

My current position is being relocated internationally, and I am actively engaged in financial services interview processes that are expected to move into background and regulatory review stages shortly. As a result, the timing of this matter has become increasingly important.

Given the seriousness of the disclosure language, the absence of any criminal or law enforcement involvement related to the underlying matter, and the substantial passage of time since the original events, I continue to believe that reassessment of the language is appropriate.

Please let me know if any additional information is needed from me. I appreciate your time and attention to this matter and look forward to your response.

Sincerely,

David Murray

On Wednesday, May 20, 2026 at 03:28:26 PM CDT, David Murray <mr.dmurray@yahoo.com> wrote:

Laura Ruiz Rivera
To: me, Cc: Lauren, and 3 others · Fri, Jun 12 at 10:18 AM

Mr. Murray,

Raymond James & Associates does not have any evidence that the U5 disclosure you are seeking to expunge is incorrect. As a result, Raymond James cannot amend your U5 or support your request for expungement.

Best regards,
Laura

Laura Ruiz Rivera
Senior Assistant General Counsel - Litigation
Raymond James Legal Department
T 727.567.4274 // F 866.205.4639 // raymondjames.com
880 Carillon Parkway, St. Petersburg, FL 33716
RAYMOND JAMES

The information transmitted is intended only for the person to whom or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination, or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, is prohibited. If you received this in error, please contact the sender and then delete and destroy all copies of the material. Thank you.

EXHIBIT I

# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>KRISTINE A KERR | **Case Number: 25SL-CC12086** | |
| Plaintiff/Petitioner:<br>DAVID MURRAY<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>DAVID MURRAY<br>12337 LAKEPOINT DR.<br>MARYLAND HEIGHTS, MO 63043 | |
| Defendant/Respondent:<br>FINANCIAL INDUSTRY REGULATORY AUTHORITY FINRA | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Miscellaneous Actions | | |

**The State of Missouri to: FINANCIAL INDUSTRY REGULATORY AUTHORITY FINRA**
**Alias:**

**CSC LAWYERS INC SERVICE CO**
**(FINRA)**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**FINRA CRD EXPUNGEMENT DEPT.**
**9509 KEY WEST AVENUE**
**ROCKETVILLE, MD 20850**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

04-NOV-2025
Date

/s/Whitney Wooldridge
Clerk

**Further Information:**
WAW

Case Number: 25SL-CC12086

## Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is ______________________________ of ____________________ County, ______________ (state).
3. I have served the above Summons by: (check one)
   - ☐ delivering a copy of the summons and petition to the defendant/respondent.
   - ☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _________________________, a person at least 18 years of age residing therein.
   - ☐ (for service on a corporation) delivering a copy of the summons and petition to: ____________________________________ (name) ______________________(title).
   - ☐ other: ______________________________________________________________.

Served at ____________________________________________________________ (address)
in __________________________ (County), ____________ (state), on ________________(date)
at __________ (time).

______________________________________ ______________________________________
Printed Name of Officer or Server Signature of Officer or Server

Subscribed and sworn to before me this ____ (day) ___________ (month), ______ (year).

I am: (check one)
- ☐ the clerk of the court of which affiant is an officer.
- ☐ the judge of the court of which affiant is an officer.
- ☐ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).
- ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

________________________________
Signature and Title

**Service Fees**

| | |
|---|---|
| Summons | $___________ |
| Non Est | $___________ |
| Mileage | $___________ (______ miles @ $.______ per mile) |
| **Total** | $___________ |

See the following page for directions to officer making return on service of summons.

Case Number: 25SL-CC12086

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

The officer or other person receiving a summons or other process shall serve the same and make return of service promptly. If the process cannot be served it shall be returned to the court within 30 days after the date of issue with a statement of the reason for the failure to serve the same; provided, however, that the time for service thereof may be extended up to ninety days from the date of issue by order of the court.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 Or 800-735-2966, at least three business days in advance of the court proceeding.

Exhibit J

## Congratulations – Next Step: Leadership in Action Interview

Inbox

Andi Wilson
To: me, Cc: Todd, and 2 others · Fri, Jan 16 at 6:41 PM

ch by sender name

Hello David,

Congratulations on advancing to the final step of the approval process, the Leadership in Action interview.

This interview focuses on the Leadership in Action model, which outlines the behaviors and expectations essential for building a healthy, thriving workforce. It is designed to align leadership actions with customer expectations, business outcomes, and our organizational values.

We use HireVue, a video interviewing platform that helps streamline interviews.

Here's what to expect:

- During the interview, you will receive each question one at a time, just like in a traditional interview.
- Before answering, you have the opportunity to practice by reviewing and responding to a sample question.
- After recording your answer, you can review it and choose to either rerecord or submit. Please note, if you record a second time, that response will be automatically submitted.
- Once you submit your answer, the interview will proceed to the next question.
- You will receive an email notification from the HireVue system once your interview is successfully completed.

Exhibit K

Fidelity CAREERS FIND YOUR FIDELITY



Dear David,

Thank you for applying to the position of 2127729 Financial Consultant - St. Louis, MO. We have received your application and are excited to get to know you better. A Fidelity recruiter is currently reviewing your experience and professional background and will be in touch as soon as that assessment is completed.

We are so glad you decided to apply with us, and we understand that waiting for a reply can be nerve-wracking. While you wait, you can review the status of your candidacy for this, or any position you have applied for at Fidelity Investments, through this link:

https://wd1.myworkdaysite.com/recruiting/fmr/FidelityCareers/userHome

As a potential member of our team, we invite you learn more about our fantastic employee culture. We are proud of our commitment to our associates and communities and are dedicated to creating a respectful and inclusive workplace for all.




Learn More

Exhibit K pt 2

Follow Up to Your Fidelity Application - Candidacy Update

Inbox

Inbox

- Message. For JAWS, turn virtual PC Cursor on if needed.

fmr@myworkday.comUnsubscribe

To: · Sun, May 24 at 2:40 PM

**Message Body**

Fidelity CAREERS FIND YOUR FIDELITY



Dear David,

Thank you for applying to 2127729 - Financial Consultant - St. Louis, MO and for taking the time to connect with us and explore our company. While we appreciate your interest in working at Fidelity Investments, you were not selected for the next step in the application process due to the Licensing requirement. This role requires an active FINRA Series 7 Securities license to be held prior to hire.

We know this may be disappointing news. We encourage you to continue exploring our job opportunities.

Here are a few ways to stay in touch with us:

Explore open roles at Fidelity Careers:

https://wd1.myworkdaysite.com/recruiting/fmr/FidelityCareers

Learn more about Fidelity, our jobs, and our people on YouTube:

https://www.youtube.com/@Fidelity

Interact with us on Instagram, fb, twitter : instagram.com/fidelity , facebook.com/FidelityInvestments, twitter.com/Fidelity

We look forward to hearing from you in the future and helping you Find Your Fidelity.

All the best,

Fidelity TA Team
Fidelity Investments Talent Acquisition

While we understand this may be disappointing news, we hope there's a place for you at Fidelity in one of our many other open positions.

You can explore some of these opportunities at Fidelity Careers, and stay in touch with us on social media, at @FidelityJobs.




Thank you for taking the time to connect with us. We look forward to hearing from you in the future and helping you Find Your Fidelity.

All the best,

Fidelity T.A.

Fidelity Investments Talent Acquisition

Exhibit K pt 3

Welcome to the Fidelity Careers Talent Network

Inbox

Inbox

- Message. For JAWS, turn virtual PC Cursor on if needed.

Fidelity Investments

To: me · Wed, Feb 7, 2024 at 3:55 AM

Visit site

**Message Body**

Fidelity CAREERS Search Jobs




Hello David,

It's official—you're now a part of the Fidelity talent network. That means you're dialed into our latest career opportunities with access to insightful content on job hunting, career changes, interview tips, resume building, and life at Fidelity.

We hope you enjoy this resource and wish you the best in all of your professional pursuits.

Sincerely,

Your friends at Fidelity Careers



**Finding Your Fidelity**

Whether you're searching for your first job or want to make an exciting career change, we can provide you with a path to help you achieve your unique

goals—and make an impact.

**Search jobs >**

Exhibit A-4
K

Tips for being a better applicant at Fidelity

Inbox

Inbox

- Message. For JAWS, turn virtual PC Cursor on if needed.

Fidelity Investments

To: me · Thu, Feb 12 at 10:04 AM

Visit site

**Message Body**

Fidelity CAREERS  Search jobs

Get interview and resume tips to be the best applicant you can be.



**Straight from the recruiter. How to prepare for an interview.**

Interested in joining Fidelity? Hear from a Fidelity recruiter and learn how to best prepare for th

Learn more

**What Fidelity associates are saying**

**Job search advice straight from Fidelity employees**

“One of the things that we always look for is that confidence: saying here's what I'm looking for, at the firm. Talking to someone that understands where they've been and where they want to g
– *Blake, Fidelity recruiter*

**Why Fidelity associates enjoy working at Fidelity**

“I have set up discussions with recruiters, coaches, and leaders across Fidelity that are ready t That’s not an opportunity I see very often. I’ve worked for different companies and this networki
– *Venkata, Fidelity associate*

Exhibit K pt 5

Follow Up to Your Fidelity Application - Candidacy Update

Inbox

Inbox

Fidelity Investment Consultant Application Update

You were not selected for the Investment Consultant role at Fidelity Investments due to the Licensing requirement, specifically the need for a FINRA Series 7 Securities license.

**Note**

- Learn more about Fidelity, our jobs, and our people on YouTube. here
- Explore open roles at Fidelity Careers. here
- Interact with Fidelity on social media.

**Summarized by Yahoo Scout**

Was this message summary helpful?

- Message. For JAWS, turn virtual PC Cursor on if needed.

fmr@myworkday.comUnsubscribe

To: · Thu, May 21 at 6:02 PM

**Message Body**

Fidelity CAREERS FIND YOUR FIDELITY



Dear David,

Thank you for applying to 2124757 - Investment Consultant - Chesterfield, MO and for taking the time to connect with us and explore our company. While we appreciate your interest in working at Fidelity Investments, you

were not selected for the next step in the application process due to the Licensing requirement. This role requires an active FINRA Series 7 Securities license to be held prior to hire.

We know this may be disappointing news. We encourage you to continue exploring our job opportunities.

Here are a few ways to stay in touch with us:

Explore open roles at Fidelity Careers:

https://wd1.myworkdaysite.com/recruiting/fmr/FidelityCareers

Learn more about Fidelity, our jobs, and our people on YouTube:

https://www.youtube.com/@Fidelity

Interact with us on Instagram, fb, twitter : instagram.com/fidelity , facebook.com/FidelityInvestments, twitter.com/Fidelity

We look forward to hearing from you in the future and helping you Find Your Fidelity.

All the best,

Fidelity TA Team
Fidelity Investments Talent Acquisition

While we understand this may be disappointing news, we hope there's a place for you at Fidelity in one of our many other open positions.

You can explore some of these opportunities at Fidelity Careers, and stay in touch with us on social media, at @FidelityJobs.

Exhibit K pt 5.1
2023

fmr@myworkday.com Unsubscribe
To: me · Wed, Apr 22 at 11:51 PM



Dear David,

Thank you for applying to 2124869 - Financial Services Representative - St. Louis - Ladue, MO and for taking the time to connect with us and explore our company. While we appreciate your interest in working at Fidelity Investments, you were not selected for the next step in the application process.

While we understand this may be disappointing news, we hope there's a place for you at Fidelity in one of our many other open positions.

You can explore some of these opportunities at Fidelity Careers, and stay in touch with us on social media, at @FidelityJobs.

Exhibit L Northwestern

# FW: David's Meeting with Precision Planning Group / Northwestern Mutual is CONFIRMED!

Inbox

kevin.cantrell@nm.com
To: me · Thu, Feb 27, 2025 at 9:21 AM

David, it was great meeting you today! Here is the email I sent you previously with all the attachments and links for you to check out to dig a little deeper into our opportunity here.

**As for our next meeting, would another Zoom at 8am on THU, 3/13 work for you?**

**Kevin Cantrell**
**Director of Recruiting and Selection**
101 South Hanley Road, Suite 1900
Clayton, MO 63105
Cell / Text: 636-734-6754
Northwestern Mutual

TOP WORK PLACES 2024

Exhibit L Synergy
Welcome to the Team

# Welcome to the team!

Inbox

# Inbox

## Welcome to the Team

Reply

Welcome to the team; Stephanie Bowman will be your main onboarding contact for your training class, and she will be available Monday morning to assist with any questions you may have.

**Note**

- Schedule a meeting with Andrew Herr. here
- Await Stephanie Bowman's contact on Monday morning for onboarding support.

**Summarized by Yahoo Scout**

Was this message summary helpful?

- Message. For JAWS, turn virtual PC Cursor on if needed.

Andrew Herr

To: me, Cc: Bowman, · Thu, Jul 2 at 9:51 AM

**Message Body**

Good morning David,

Congratulations again on accepting your offer. We're excited to have you join us! As you prepare for your upcoming training class, Stephanie Bowman will be your main point of contact for onboarding support. She'll help guide you through any pre-class preparation and will also be available during training to assist with questions along the way. Stephanie is currently out of the office and will return on July 6th. She will be reaching out to you Monday morning to connect.
If you need anything urgent before then, don't hesitate to reach out, and we'll be happy to assist.
We're looking forward to getting you started!

Andrew

**Andrew Herr**
LEADERSHIP DIRECTOR & FINANCIAL PLANNER

**Text or Call:** (636) 451-8989
**Calls Only:** (636) 728-2499
www.synergywealthsolutions.com

16150 Main Circle Drive, Suite 400, Chesterfield, MO 63017

Local firms are sales offices of Massachusetts Mutual Life Insurance Company (MassMutual), and are not subsidiaries of MassMutual or its affiliated companies.

**To schedule a meeting, Click This Link**

This e-mail transmission may contain information that is proprietary, privileged and/or confidential and is intended exclusively for the person(s) to whom it is addressed. Any use, copying, retention or disclosure by any person other than the intended recipient or the intended recipient's designees is strictly prohibited. If you are not the intended recipient or their designee, please notify the sender immediately by return e-mail and delete all copies.

Registered Representative of and securities offered through MML Investors Services, LLC, Member SIPC and a MassMutual subsidiary. Transactions may not be accepted by e-mail, fax, or voicemail

**** This message was sent via secure encryption. ****

Exhibit M Citi Wealth

citi

English Settings [illegible]

Careers Candidate Home

**Welcome, David Murray**

My Tasks

citi



You have no tasks.

My Applications

Thank you for your interest in employment with Citi. We will be in contact with you regarding your application if you are

## My Applications

Thank you for your interest in employment with Citi. We will be in contact with you regarding your application if you are selected to move forward in the process.

Active (11) Inactive (31)

| Job Title | Job Req | My Application Status | Date Submitted | Action |
|---|---|---|---|---|
| Issue Management Lead Analyst | 26982423 | **Application Received** | August 10, 2026 | ••• |
| Branch Services Lead Analyst - On-Boarding & Servicing, VP | 26985322 | **Application Received** | August 10, 2026 | ••• |
| Business Banking Sales Support Lead Analyst, VP | 26980617 | **Application Received** | July 27, 2026 | ••• |
| Wealth - Investment Sales Senior Lead - Senior Vice President | 26960684 | **Recruiting Review** | June 22, 2026 | ••• |

5 - 8 of 11 applications « ‹ 1 2 3 › »

## My Applications

Thank you for your interest in employment with Citi. We will be in contact with you regarding your application if you are selected to move forward in the process.

Active (11) Inactive (31)

| Job Title | Job Req | My Application Status | Date Submitted | Action |
|---|---|---|---|---|
| Issue Management Lead Analyst | 26982423 | **Application Received** | August 10, 2026 | ••• |
| Branch Services Lead Analyst - On-Boarding & Servicing, VP | 26985322 | **Application Received** | August 10, 2026 | ••• |
| Business Banking Sales Support Lead Analyst, VP | 26980617 | **Application Received** | July 27, 2026 | ••• |
| Wealth - Investment Sales Senior Lead - Senior Vice President | 26960684 | **Recruiting Review** | June 22, 2026 | ••• |

5 - 8 of 11 applications « ‹ 1 2 3 › »

Exhibit N


# DAVID MURRAY

St. Louis, MO
(636) 373-0552
mr.dmurray@yahoo.com


**RISK, COMPLIANCE & CONTROL EXECUTIVE | $63M PORTFOLIO | AUDIT, REGULATORY & ENTERPRISE GOVERNANCE**
**I help financial institutions strengthen regulatory compliance, reduce operational risk, improve audit readiness, and enhance enterprise governance by leading control programs, regulatory oversight initiatives, vendor risk management, and cross-functional remediation efforts across highly regulated banking environments.**

## SUMMARY OF ACCOMPLISHMENTS

- Brings 20+ years of financial services leadership spanning banking, regulatory compliance, operational risk, audit oversight, collections, vendor governance, and investment advisory
- Built and managed a $63M investment portfolio consisting of individual and institutional investor relationships
- Led regulatory compliance and vendor oversight initiatives supporting enterprise-level banking operations and governance programs
- Managed teams of up to 35 associates while improving operational performance, productivity, and compliance outcomes
- Directed audit readiness, regulatory reviews, issue remediation, and control validation activities across multiple business functions
- Designed risk mitigation strategies, internal controls, and governance processes reducing operational and regulatory exposure
- Developed executive reporting, forecasting models, KPI dashboards, and performance analytics supporting leadership decision-making
- Created compliance review methodologies, sampling techniques, and audit testing procedures strengthening regulatory oversight
- Facilitated root cause analysis and corrective action programs addressing operational, compliance, and audit findings
- Consistently recognized for leadership, regulatory expertise, stakeholder management, and enterprise risk governance capabilities

## AREAS OF EXPERTISE

- Enterprise Risk Management
- Regulatory Compliance
- Audit & Examination Management
- Operational Risk Oversight
- Governance & Controls
- Vendor Risk Management
- Regulatory Remediation
- Internal Controls Testing
- Executive Reporting & Analytics
- Financial Analysis & Valuation
- Team Leadership & Development
- Process Improvement

## PROFESSIONAL EXPERIENCE

**Citibank**
**Cross-Disciplinary Control Senior Analyst, Assistant Vice President** | Apr 2025 – Present

- Lead enterprise control oversight initiatives supporting regulatory compliance, operational risk management, and audit readiness activities
- Partner with Compliance, Internal Audit, Risk Management, Legal, Technology, and Executive Leadership teams to strengthen governance frameworks
- Execute control monitoring, issue management, remediation validation, and risk mitigation programs across multiple business units
- Manage regulatory examinations, audit responses, evidence collection, stakeholder communications, and issue closure activities
- Develop executive dashboards, risk reporting, governance metrics, and management presentations
- Conduct root cause analysis supporting sustainable corrective action implementation
- Identify control gaps and operational risks while improving transparency and regulatory compliance performance

**U.S. Bank**
**Regulatory Review & Vendor Management Specialist** | Oct 2021 – Apr 2025

- Managed regulatory oversight and compliance monitoring activities for multiple vendor organizations
- Executed regulatory audits, control testing, and compliance reviews supporting enterprise governance requirements

- Designed audit sampling methodologies and testing procedures improving review effectiveness and consistency
- Identified regulatory exposure risks and implemented corrective action recommendations
- Collaborated with vendor executive teams and business leaders to address compliance findings and remediation plans
- Strengthened vendor governance processes supporting regulatory adherence and operational performance
- Developed strong partnerships across Risk, Recovery, Compliance, and Operations organizations

**U.S. Bank**
**Collections Manager** | Mar 2018 – Oct 2021

- Led teams of 17–35 associates supporting collections, recovery, and customer resolution operations
- Developed forecasting models, performance dashboards, KPI reporting, and workforce planning analytics
- Created and implemented recruiting, onboarding, and training processes improving team effectiveness
- Designed departmental negotiation and de-escalation programs supporting customer retention and resolution outcomes
- Analyzed operational performance, penetration, and saturation reporting to identify improvement opportunities
- Collaborated with multiple business units to improve departmental performance and service delivery
- Supported strategic planning initiatives driving operational consistency and productivity

**Client Services, Inc.**
**Recovery Manager** | Oct 2008 – Mar 2018

- Managed recovery portfolios supporting major national financial institutions
- Led training and development initiatives for commercial and pre-legal collections teams
- Maintained internal audit programs and monitored KPI performance reporting
- Implemented policy and procedural improvements reducing operational and regulatory risk
- Conducted performance analysis, account reviews, and operational assessments
- Partnered with financial institution oversight teams to maintain compliance standards
- Supported portfolio growth, quality assurance, and operational improvement initiatives

**Morgan Stanley / Union Planter**
**Financial Advisor / Investment Banker** | Sept 2001 – Oct 2005

- Built and managed a $63M portfolio of individual and institutional investor assets
- Consistently ranked among the Top 5 producers in the region for sales volume and business development
- Provided investment advisory, estate planning, and wealth management services
- Supported mergers and acquisitions, IPOs, leveraged buyouts, private equity, and debt financing activities
- Developed financial models, valuation analyses, EBITDA projections, and strategic recommendations
- Managed and coached banking branch teams to identify investment opportunities and grow assets under management
- Conducted due diligence and valuation analysis supporting corporate finance transactions

**<u>EDUCATION</u>**
**Business Management & Finance Studies**
University of Missouri - Columbia

**<u>LICENSES & CERTIFICATIONS</u>**
**Active Licenses**

- Series 63
- Series 65
- Life & Health Insurance
- Variable Life & Variable Annuity
- Property & Casualty Insurance
- Credit & Travel Insurance

**Professional Certifications**

- Citi Investment Banking Certificate
- Citi Markets Sales & Trading Certificate
- Citi Markets Quantitative Analysis (MQA) Certificate
- Latham & Watkins Mergers & Acquisitions Certificate
- Goodwin Private Equity M&A Certificate

**Previously Held**

- Series 7
- Series 31

**<u>TECHNICAL SKILLS</u>**
Microsoft Excel | Financial Modeling | SWOT Analysis | Risk Analytics | Audit Testing | Governance Reporting | PowerPoint | Regulatory Compliance Systems | Vendor Management Platforms | Operational Risk Assessment | KPI Development | Executive Dashboards

Exhibit O Cover

# FINRA FORM U5 AUTHORITIES Filing, Amendment, Accuracy, and Prospective-Firm Review

Prepared as a documentary authority compilation for Plaintiff's Petition.

The materials in this exhibit are official FINRA materials or reproduce/identify the relevant FINRA authority. They are offered to identify the governing regulatory framework; the Court may determine the legal weight and applicability of each authority.

Sub-exhibits: O-1 FINRA By-Laws Article V, §3; O-2 Form U5 instructions/form materials; O-3 FINRA Form U4/U5 Interpretive Questions; O-4 Regulatory Notice 10-39; O-5 FINRA Rule 1122; O-6 Department of Enforcement v. Spartan Capital Securities, Inc.; O-7 FINRA registration/pre-registration materials regarding review of registration records by firms considering candidates.

## Official-source references

See the individual sub-exhibits for source identification.

Exhibit O part 1

# FINRA BY-LAWS — NOTIFICATION BY MEMBER TO THE CORPORATION AND ASSOCIATED PERSON OF TERMINATION; AMENDMENTS TO NOTIFICATION

Article V, Section 3 requires a member to submit an initial Form U5 within 30 calendar days after terminating an associated person's registration.

Section 3 also requires an amended Form U5 within 30 calendar days after the member learns of facts or circumstances giving rise to an amendment.

The provision further addresses providing the initial and amended Form U5 to the terminated individual.

Current FINRA materials expressly describe this provision as creating a continuing obligation to update the Form U5 after termination.

Source: FINRA By-Laws, Article V, Section 3. FINRA's 2025 Regulatory Notice 25-09 summarizes the operative requirements.

## Official-source references

FINRA By-Laws, Article V, Section 3; see also FINRA Regulatory Notice 25-09.

Exhibit O part 2

# FORM U5 — UNIFORM TERMINATION NOTICE FOR SECURITIES INDUSTRY REGISTRATION

FINRA's Form U5 materials identify three filing types: Full, Partial, and Amendment.

A Full U5 is used when terminating an individual from the firm; FINRA's instructions state it must be filed no later than 30 days after the individual leaves employment.

An Amendment U5 is used to update or amend disclosure, termination date, reason for termination, and certain other information for an individual already terminated.

FINRA's instructions state that firms should file amendments to the Reason for Termination and/or Termination Explanation promptly and explain the basis for the amendment.

Source: FINRA, Individual Form Filing — Form U5, Release 2015.09.

## Official-source references

FINRA, Individual Form Filing — Form U5, Release 2015.09.

Exhibit O part 3

# FINRA FORM U4 AND U5 INTERPRETIVE GUIDANCE

Question 7E directly addresses whether a firm's Form U5 reporting obligation ceases after a certain period of time.

FINRA's answer is: No. The guidance states that Article V, Section 3 requires an amendment to information on Form U5 that is inaccurate or incomplete and expressly states that this obligation does not lapse.

The guidance further states that if a firm receives actual notice of a reportable event involving a former associated person, the firm must amend the person's Form U5.

This is particularly relevant where a petition alleges that historical U5 information has remained inaccurate or incomplete and continues to affect the former associated person's professional record.

Source: FINRA, Form U4 and U5 Interpretive Questions, Question 7E.

## Official-source references

FINRA, Form U4 and U5 Interpretive Questions, Question 7E.

Exhibit O part 4

# FINRA REGULATORY NOTICE 10-39 — OBLIGATION TO PROVIDE TIMELY, COMPLETE AND ACCURATE INFORMATION ON FORM U5

FINRA issued Regulatory Notice 10-39 on September 8, 2010.

FINRA reminded member firms of their obligation to provide timely, complete, and accurate information on Form U5 and to file amended Forms U5 when required.

FINRA explained that Form U5 information is used by FINRA in regulatory oversight and by states, regulators, and member firms in connection with licensing and employment decisions.

The Notice is therefore relevant to the significance of accuracy in Form U5 reporting and to the downstream use of U5 information by prospective industry employers.

Source: FINRA Regulatory Notice 10-39 (Sept. 8, 2010).

## Official-source references

FINRA Regulatory Notice 10-39 (September 8, 2010).

Exhibit O part 5

# FINRA RULE 1122 — FILING OF INACCURATE INFORMATION

FINRA Rule 1122 provides that no member or person associated with a member shall file with FINRA information relating to membership or registration that is incomplete or inaccurate so as to be misleading, or that could tend to mislead, or fail to correct such filing after notice thereof.

FINRA enforcement materials have applied Rule 1122 in the context of Form U5 reporting obligations, together with Article V, Section 3.

For the Petition, the rule is relevant to the regulatory importance of correcting registration information after a firm has notice that information is inaccurate or incomplete.

## Official-source references

FINRA Rule 1122.

Exhibit O part 6

# FINRA DEPARTMENT OF ENFORCEMENT v. SPARTAN CAPITAL SECURITIES, INC. — FORM U5 AMENDMENT OBLIGATION

FINRA's published disciplinary decision discusses Article V, Section 3(b) and the requirement that a member amend a Form U5 when the member learns of facts or circumstances causing information in the Form U5 to become inaccurate or incomplete.

The decision describes the 30-day period for filing an amendment after learning of facts or circumstances giving rise to the amendment.

The decision also discusses FINRA Rule 1122's prohibition on filing registration information that is incomplete or inaccurate so as to be misleading, or failing to correct such a filing after notice.

Source: FINRA Office of Hearing Officers, Department of Enforcement v. Spartan Capital Securities, Inc., published decision/appeal materials.

## Official-source references

FINRA Office of Hearing Officers, Department of Enforcement v. Spartan Capital Securities, Inc.

Exhibit O part 7

# FINRA REGISTRATION MATERIALS — PRE-REGISTRATION REVIEW

FINRA's registration infrastructure includes an Individual Pre-Registration Search described by FINRA as providing access to registration records of industry individuals being considered for employment.

FINRA's public registration materials also explain that firms use CRD filings for registration and that Form U5 is the Uniform Termination Notice for Securities Industry Registration.

These materials provide documentary support for the proposition that registration history is relevant to firms evaluating individuals for employment and registration.

Source: FINRA Developer Center, Individual Pre-Registration Search documentation; FINRA registration materials.

## Official-source references

FINRA Developer Center, Individual Pre-Registration Search; FINRA registration materials.

Exhibit P

# SEC FILINGS DOCUMENTING RAYMOND JAMES FINANCIAL'S ACQUISITION OF MORGAN KEEGAN

Plaintiff's Exhibit P

Primary SEC materials documenting Raymond James Financial, Inc.'s acquisition of Morgan Keegan & Company, Inc. from Regions Financial Corporation, completed April 2, 2012.

Sub-exhibits: P-1 through P-7.

## SEC source

See P-1 through P-7.

# EXHIBIT Q

## RAYMOND JAMES INTEGRATION RECORDS

## SEC FILINGS DOCUMENTING THE TRANSFER AND INTEGRATION OF MORGAN KEEGAN'S FINANCIAL-ADVISOR AND CLIENT-ACCOUNT BUSINESS

**Plaintiff's Court Exhibit — Primary SEC Sources**

**Focus: February 2013 transfer of Morgan Keegan financial advisors and client accounts to Raymond James & Associates, Inc. (RJ&A;).**

# EXHIBIT Q — SOURCE INDEX

| Sub-Exhibit | SEC Filing / Record | Principal relevance |
|---|---|---|
| Q-1 | RJF Form 8-K — Jan. 11, 2012 | Documents Raymond James's agreement to acquire Morgan Keegan from Regions. |
| Q-2 | Regions Form 8-K — Jan. 11, 2012 | Regions reported the Stock Purchase Agreement under which Raymond James would acquir |
| Q-3 | Regions Exhibit 99.3 — Jan. 11, 2012 | Regions announced the agreement to sell Morgan Keegan to Raymond James. |
| Q-4 | RJF Form 8-K — Apr. 2, 2012 | Raymond James reported completion of the Morgan Keegan acquisition. |
| Q-5 | RJF Exhibit 99.1 — Apr. 2, 2012 | Raymond James announced completion of the acquisition and integration strategy. |
| Q-6 | Regions Form 8-K — Apr. 2, 2012 | Regions reported completion of the sale of Morgan Keegan to Raymond James. |
| Q-7 | RJF Form 10-Q — Mar. 31, 2012 | Documents the acquisition agreement and expected integration. |
| Q-8 | RJF Form 10-Q — Jun. 30, 2012 | States integration of Morgan Keegan capital-markets operations began immediately after clos |
| Q-9 | RJF Form 10-K — Sept. 30, 2012 | Reports over 900 Morgan Keegan financial advisors and the planned integration into RJ&A. |
| Q-10 | RJF Form 10-Q — Dec. 31, 2012 | Reports 89% retention of Morgan Keegan financial advisors and the pending integration. |
| Q-11 | RJF Form 10-Q — Mar. 31, 2013 | States that in mid-February 2013 all Morgan Keegan financial advisors and client accounts we |
| Q-12 | RJF March 2013 Form 10-Q PDF | States that 863 Morgan Keegan financial advisors became RJ&A financial advisors. |
| Q-13 | RJF 2Q13 Shareholders Letter | States that the Morgan Keegan financial-advisor transition occurred on schedule in mid-Febru |
| Q-14 | RJF Form 10-Q — Jun. 30, 2013 | Again states that all Morgan Keegan financial advisors and client accounts transferred to RJ& |
| Q-15 | RJF Form 10-K — Sept. 30, 2013 | States that all Morgan Keegan financial advisors and client accounts were transferred to and i |
| Q-16 | RJF Form 10-Q — Dec. 31, 2013 | Confirms the mid-February 2013 transfer of Morgan Keegan client accounts to RJ&A and iden |
| Q-17 | RJF Form 10-K — Sept. 30, 2014 | Confirms that all Morgan Keegan financial advisors and client accounts had been transferred a |

**Important source note:** This packet contains the SEC records I could verify from the SEC's publicly indexed filings in this research session. I have **not** represented this as a 67-filing compilation because no authenticated 67-filing list was supplied and I will not invent SEC records. The records below are primary SEC sources and should be treated as the verified core of Exhibit Q.

## Q-1 — RJF Form 8-K — Jan. 11, 2012

**Purpose:** Acquisition agreement

**Relevance:** Documents Raymond James's agreement to acquire Morgan Keegan from Regions.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000512000014/rjf-20120111x8k.htm

## Q-2 — Regions Form 8-K — Jan. 11, 2012

**Purpose:** Sale agreement

**Relevance:** Regions reported the Stock Purchase Agreement under which Raymond James would acquire Morgan Keegan.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/1281761/000119312512010718/d281818d8k.htm

# Q-3 — Regions Exhibit 99.3 — Jan. 11, 2012

**Purpose:** Transaction announcement

**Relevance:** Regions announced the agreement to sell Morgan Keegan to Raymond James.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/1281761/000119312512009267/d259443dex993.htm

# Q-4 — RJF Form 8-K — Apr. 2, 2012

**Purpose:** Closing

**Relevance:** Raymond James reported completion of the Morgan Keegan acquisition.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000119312512145080/d328451d8k.htm

## Q-5 — RJF Exhibit 99.1 — Apr. 2, 2012

**Purpose:** Closing press release

**Relevance:** Raymond James announced completion of the acquisition and integration strategy.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000119312512145080/d328451dex991.htm

# Q-6 — Regions Form 8-K — Apr. 2, 2012

**Purpose:** Closing by seller

**Relevance:** Regions reported completion of the sale of Morgan Keegan to Raymond James.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/1281761/000119312512145125/d324073d8k.htm

## Q-7 — RJF Form 10-Q — Mar. 31, 2012

**Purpose:** Pre-closing integration/acquisition

**Relevance:** Documents the acquisition agreement and expected integration.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000512000056/q100312.htm

## Q-8 — RJF Form 10-Q — Jun. 30, 2012

**Purpose:** Post-closing integration

**Relevance:** States integration of Morgan Keegan capital-markets operations began immediately after closing.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000512000077/rjf-2012630x10q.htm

# Q-9 — RJF Form 10-K — Sept. 30, 2012

**Purpose:** Integration plan

**Relevance:** Reports over 900 Morgan Keegan financial advisors and the planned integration into RJ&A.;

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000512000113/rjf-2012930x10k.htm

# Q-10 — RJF Form 10-Q — Dec. 31, 2012

**Purpose:** Pre-conversion status

**Relevance:** Reports 89% retention of Morgan Keegan financial advisors and the pending integration.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000513000014/rjf-20121231x10q.htm

# Q-11 — RJF Form 10-Q — Mar. 31, 2013

**Purpose:** February 2013 conversion

**Relevance:** States that in mid-February 2013 all Morgan Keegan financial advisors and client accounts were transferred to RJ&A.;

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000513000038/rjf-20130331x10q.htm

> **Key SEC statement:** Raymond James reported that in mid-February 2013 "all of the Morgan Keegan financial advisors and client accounts" were transferred from the Morgan Keegan platform to the RJ&A; platform.

# Q-12 — RJF March 2013 Form 10-Q PDF

**Purpose:** Advisor conversion

**Relevance:** States that 863 Morgan Keegan financial advisors became RJ&A; financial advisors.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000513000038/rjfmarch31201310qpdf.pdf

> **Key SEC statement:** The filing identifies 863 Morgan Keegan financial advisors as becoming RJ&A; financial advisors at the mid-February 2013 integration.

## Q-13 — RJF 2Q13 Shareholders Letter

**Purpose:** Integration milestone

**Relevance:** States that the Morgan Keegan financial-advisor transition occurred on schedule in mid-February.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000513000043/rjf_2q13xshareholdersletter.htm

## Q-14 — RJF Form 10-Q — Jun. 30, 2013

**Purpose:** Post-conversion confirmation

**Relevance:** Again states that all Morgan Keegan financial advisors and client accounts transferred to RJ&A.;

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000513000064/rjf-20130630x10q.htm

# Q-15 — RJF Form 10-K — Sept. 30, 2013

**Purpose:** Completed integration

**Relevance:** States that all Morgan Keegan financial advisors and client accounts were transferred to and integrated with RJ&A.;

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000513000089/rjf-2013930x10k.htm

> **Key SEC statement:** Raymond James described the mid-February 2013 transfer of all Morgan Keegan financial advisors and client accounts to RJ&A; as a significant fiscal-2013 integration milestone.

## Q-16 — RJF Form 10-Q — Dec. 31, 2013

**Purpose:** Post-integration corporate structure

**Relevance:** Confirms the mid-February 2013 transfer of Morgan Keegan client accounts to RJ&A; and identifies 863 advisors as RJ&A; advisors.

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000514000012/rjf-20131231x10q.htm

## Q-17 — RJF Form 10-K — Sept. 30, 2014

**Purpose:** Continuing integration record

**Relevance:** Confirms that all Morgan Keegan financial advisors and client accounts had been transferred and integrated with RJ&A.;

**Official SEC source:**

https://www.sec.gov/Archives/edgar/data/720005/000072000514000077/rjf-2014930x10k.htm

# EXHIBIT R

## FINRA MORGAN KEEGAN FIRM RECORD

## MORGAN KEEGAN & COMPANY, LLC / MORGAN KEEGAN & COMPANY, INC.

## CRD NO. 4161 • SEC NO. 8-15001

### Current and Historical FINRA Firm Information

### Plaintiff's Court Exhibit — FINRA BrokerCheck / CRD Record

Prepared from FINRA's official BrokerCheck firm record and related FINRA materials. Source information is identified throughout; the official FINRA record controls.

# EXHIBIT R — INDEX

| Section | Record | Relevance |
|---|---|---|
| R-1 | Current FINRA BrokerCheck Firm Report — CRD 4161 | Current status, identity, addresses, firm classification and disclosure summary |
| R-2 | Firm Identity / CRD and SEC Numbers | Identifies Morgan Keegan's regulatory record |
| R-3 | Historical Names and Successions | Historical Morgan Keegan corporate/registration identity |
| R-4 | FINRA Registration Status | Shows present terminated status and historical FINRA registration |
| R-5 | Firm Operations / Business Information | Historical firm information and regulatory profile |
| R-6 | Disclosure Summary | FINRA-reported disclosure categories and counts |
| R-7 | FINRA Rule 8312 Context | Explains public BrokerCheck information and limitations |
| R-8 | Related FINRA Registration Evidence | Examples of FINRA BrokerCheck records showing Morgan Keegan CRD 4161 regi: |
| R-9 | Source URLs and Authentication Note | Official FINRA source links and filing-use note |

This exhibit is a court-ready compilation of the FINRA firm information that can be authenticated directly through FINRA's BrokerCheck system. It does not represent that every historical CRD document is reproduced here. Where the official FINRA record is available online, the official source is identified.

# EXHIBIT R-1 — CURRENT FINRA BROKERCHECK FIRM REPORT

**Firm:** MORGAN KEEGAN & COMPANY, LLC

**CRD:** 4161 **SEC:** 8-15001

**FINRA status:** Previously Registered Brokerage Firm; not currently registered as a broker.

**Firm type:** Limited Liability Company.

**Formation:** Tennessee, July 29, 2013.

**Fiscal year end:** September.

**Main office:** 50 North Front Street, Memphis, TN 38103-9980.

**Mailing address:** 880 Carillon Parkway, St. Petersburg, FL 33716.

**Telephone:** 901-524-4100.

**FINRA-reported disclosure summary:** 86 regulatory events, 9 civil events, and 173 arbitration events are displayed in the current BrokerCheck firm summary; one disclosure is attributed to a non-registered control affiliate.

Official FINRA source: https://files.brokercheck.finra.org/firm/firm_4161.pdf

# EXHIBIT R-2 — REGULATORY IDENTITY

FINRA's current BrokerCheck record identifies Morgan Keegan & Company, LLC under **CRD No. 4161** and **SEC No. 8-15001**. The same FINRA record states that the report covers the firm's historical firm information and that additional information is contained in the detailed report.

Historical names associated with the record include Morgan Keegan & Company, Inc. and Morgan Keegan. FINRA's search record also displays the LLC name and these historical identifiers in connection with CRD 4161.

Official FINRA BrokerCheck source: https://brokercheck.finra.org/firm/summary/4161

# EXHIBIT R-3 — HISTORICAL NAMES, SUCCESSIONS, AND CORPORATE CONTINUITY

FINRA's BrokerCheck firm record expressly states that its Firm History section contains information concerning the firm's history, including other business names and successions such as mergers and acquisitions. This is significant because CRD 4161 is the regulatory identifier under which historical Morgan Keegan registration information can be traced.

The record should be read together with the Raymond James SEC acquisition records in Exhibit P and the Raymond James integration records in Exhibit Q. Those SEC records document the acquisition of Morgan Keegan by Raymond James and the subsequent transfer of the Morgan Keegan financial-advisor and client-account business to Raymond James & Associates.

Official FINRA source: https://brokercheck.finra.org/firm/summary/4161

# EXHIBIT R-4 — FINRA REGISTRATION STATUS

The current FINRA BrokerCheck summary identifies Morgan Keegan & Company, LLC, CRD 4161, as a **Previously Registered Brokerage Firm** and states that it is **not currently registered as a broker**. The report identifies the firm as terminated and indicates that its FINRA/national securities exchange registration is no longer active.

This current status should not be confused with the historical registration of Morgan Keegan & Company, Inc. under the same CRD number. The historical CRD record is relevant because individual BrokerCheck records continue to identify prior registrations with Morgan Keegan & Company, Inc., CRD 4161.

Official FINRA source: https://files.brokercheck.finra.org/firm/firm_4161.pdf

# EXHIBIT R-5 — FIRM OPERATIONS AND HISTORICAL BUSINESS RECORD

FINRA's current firm record identifies Morgan Keegan & Company, LLC as a Tennessee limited liability company formed July 29, 2013. The record provides the Memphis main-office address and a St. Petersburg mailing address.

FINRA's firm history and operations sections are designed to preserve information about the firm's historical identity, registrations, business activities, and successions. The current record therefore provides a regulatory-record bridge between the historical Morgan Keegan entity and its later status as a terminated FINRA firm.

Official FINRA source: https://files.brokercheck.finra.org/firm/firm_4161.pdf

# EXHIBIT R-6 — FINRA DISCLOSURE SUMMARY

The current FINRA BrokerCheck summary for CRD 4161 reports the following disclosure categories:

| **Disclosure category** | **FINRA-reported count** |
|---|---|
| Regulatory events | 86 |
| Civil events | 9 |
| Arbitration | 173 |
| Non-registered control-affiliate disclosures | 1 |

These are counts displayed by FINRA in the current firm report; they are not independent findings by the court and should not be characterized as such. The report itself provides the underlying disclosure categories and events.

Official FINRA source: https://files.brokercheck.finra.org/firm/firm_4161.pdf

# EXHIBIT R-7 — FINRA RULE 8312 / BROKERCHECK CONTEXT

FINRA explains that BrokerCheck information is primarily based on information filed on uniform registration forms and that public availability is governed in significant part by FINRA Rule 8312. FINRA also cautions that state regulators may maintain information not appearing in BrokerCheck, including information no longer required to be reported or updated because of age or final disposition.

> This limitation is important when using the CRD/BrokerCheck record in litigation: absence of a particular item from a public BrokerCheck summary does not necessarily establish that the item never existed in the underlying CRD record.

Official FINRA BrokerCheck source and Rule 8312 materials: https://brokercheck.finra.org/ and https://www.finra.org/rules-guidance/rulebooks/finra-rules/8312

# EXHIBIT R-8 — RELATED FINRA REGISTRATION EVIDENCE

Individual BrokerCheck reports provide additional evidence of the historical CRD 4161 registration and the transition of individual representatives from Morgan Keegan to Raymond James & Associates.

**Example 1:** FINRA BrokerCheck record for Thomas Francis Galvin identifies Morgan Keegan & Company, Inc. (CRD 4161) from December 23, 1998 through March 13, 2013, followed by Raymond James & Associates (CRD 705) beginning April 10, 2012.

**Example 2:** FINRA BrokerCheck record for Jeffrey G. Hull Jr. identifies Morgan Keegan & Company, Inc. (CRD 4161) through February 13, 2013 and Raymond James & Associates (CRD 705) beginning February 13, 2013.

**Example 3:** FINRA BrokerCheck record for Richard F. Colleoni Jr. identifies Morgan Keegan & Company, Inc. (CRD 4161) through February 13, 2013 and Raymond James & Associates (CRD 705) beginning February 13, 2013.

These individual records are illustrative rather than an exhaustive census of Morgan Keegan representatives.

Official FINRA sources: https://brokercheck.finra.org/individual/summary/1606332 ; https://brokercheck.finra.org/individual/summary/5788883 ; https://brokercheck.finra.org/individual/summary/4227912

Exhibit S Northwestern Mutual

# FW: David's Meeting with Precision Planning Group / Northwestern Mutual is CONFIRMED!

Inbox

kevin.cantrell@nm.com
To: me · Thu, Feb 27, 2025 at 9:21 AM

David, it was great meeting you today! Here is the email I sent you previously with all the attachments and links for you to check out to dig a little deeper into our opportunity here.

**As for our next meeting, would another Zoom at 8am on THU, 3/13 work for you?**

**Kevin Cantrell**
**Director of Recruiting and Selection**
101 South Hanley Road, Suite 1900
Clayton, MO 63105
Cell / Text: 636-734-6754
Northwestern Mutual

TOP WORK PLACES 2024

Exhibit S NYL 2017 Email

David Murray
To: smwatson@ft.newyorklife.com · Tue, Dec 19, 2017 at 10:48 AM

# Sydney Watson

Sydney Watson
AGENCY SUPPORT
CONTRACTING & LICENSING REPRESENTATIVE
New York Life Insurance Company
St. Louis General Office
1 City Place Drive, Suite 260, St. Louis, MO 63141
smwatson@ft.newyorklife.com
(314)994-6421 FAX (314)994-6477

David Murray
To: smwatson@ft.newyorklife.com · Tue, Dec 19, 2017 at 10:48 AM

**From:** Charmaine L Goodman
**Sent:** Wednesday, December 06, 2017 6:04 PM
**To:** Sydney M Watson <smwatson@ft.newyorklife.com>
**Cc:** Monica Manzanares <mmanzanares@ft.newyorklife.com>
**Subject:** FW: Pre-Candidate Overlook- #172334 Murray

This is the verbiage from his U-5 termination from Morgan Keegan for "conversion of funds." We would need a written explanation from the candidate as well as any documentation he has on this issue. It appears it was related to a customer complaint alleging misappropriation and the claim was settled for $5235.53 after his discharge.

Exhibit 5

MassMutual
Onboarding

Log Out

# Hello, David Murray

Active Applications (2) ⓘ

AGENCY #101

Career Sampling Contract

Documents 3

Application Status as of July 29, 2026

Upload

Submitted Agency Review MassMutual Review

AGENCY #101

Preliminary Application

Documents 3

Application Status as of July 22, 2026

Upload

Submitted Agency Review MassMutual Review

MassMutual

©2026 Massachusetts Mutual Life Insurance Company (MassMutual®), Springfield, MA 01111-0001. All rights reserved.

Terms of Use Consumer Notification and Rights Privacy

Synergy / Mass Mutual

Exhibit S



MassMutual

Log Out

Hello, David Murra

Active Applications (2)

Additional documentation is neede
View request

AGENCY #101
Career Sampling Contract
Application Status as of July 31, 2026
Submitted — Agency Review

AGENCY #101
Preliminary Application
Application Status as of July 22, 2026
Submitted — Agency Review

Documents 7
Upload

Documents 3
Upload

**Submit documents**

**Application:**
Career Sampling Contract

**Instructions from your onboarding team:**
Please provide a supplemental statement describing the circumstances that resulted in the termination from Morgan Keegan, including what occurred, the candidate's involvement, the firm's findings, whether any client funds, accounts, or transactions were impacted, and any resulting regulatory, legal, or civil actions.

**Requested file types:**

- Personal Statement

**Important:** Please include the file type in the name of the document(s) you are uploading. Example: "YourName_W9"

Fields marked * are required.

**Upload files** *

Drag and drop files here, or browse

Synergy / MASS Mutual

Employment Opportunity Chron

| Date | Employer / Company | Position | What happened | U5 Involvement | Business Contact | Results | Evidence Source | Purpose |
|---|---|---|---|---|---|---|---|---|
| 10/172007 - 12/19/2007 | VALIC Finacial Advisors, INC. | Financial Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward | U5 reviewed / hiring process stopped | NA | NA | FINRA Portal / Exhibit S. | Hisotrical Evidence |
| 12/16/2024 - 2/27/2025 | Northwestern Mutual / The Zara Group | Wealth Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward | U5 reviewed / hiring process stopped | Cassandra Clemens / Herman I. Jimerson / Kevin Cantrell | Phone conversation with Kevin Cantrell stating we can't move forward due to listing on U5 | Email / Exhibit S Zara Group / Exhibit S Northwestern / Exhibit S Moving Forward | Current Impact |
| 1/31/2025 - 4/2/2025 | Principal Financial | Financial Advisor | Final Interview / I paused the interview process due to US concerns | I paused the process / hiring process stopped | Jane Choi / Patrick Dolan | I paused the hiring process due to U5 concerns | Direct emails from Jan-April 2025 | Current Impact |
| 12/27/2023 | Fidelity Investments | Central Relationship Manager | Final Interview / Completed Interview Process / Next Steps Moving Forward | U5 reviewed / hiring process stopped | NA | Phone conversation with Representative stating we can't move forward and was unable to discuss details | Direct email 12/27/2023 | Current Impact |
| 5/21/2026 | Fidelity Investments | Investment Consultant | Did not move forward due to non active Series 7 license | Application reviewed / hiring process stopped | NA | NA | Email 5/21/2026 Req 2124757 | Current Impact |
| 4/9/2025 - 1/16/2026 | State Farm | Sales Leader | Final Interview / I paused the interview process due to US concerns | I paused the process / hiring process stopped | Andi Wilson / Todd Hoyt | I paused the hiring process due to U5 concerns | Email 1/16/2026 | Current Impact |
| 12/19/2017 | New York Life | Financial Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward | U5 reviewed / hiring process stopped | Charmaine Goodman / Sydney Watson | Phone conversation with Charmaine Goodman she stated unable to move forward due to U5 | Email 12/19/2017 | Current Impact |
| 5/26/2026 - 6/26/2026 | New York Life | Financial Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward | U5 reviewed / hiring process stopped | Byron Goodrich | Byron Goodrich he stated unable to move forward due to U5. Received Letter | Email Exhibit S NYL 2026 | Current Impact |
| 6/1/2026 - 8/6/2026 | Synergy Wealth Solutions / Mass Mutual | Financial Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward | U5 reviewed / hiring process stopped | Carrie Bischof / Stephanie Bowman / Andrew Herr | After responding to U5 questions; received a letter from Synergy | Exhibit S Synergy decline | Current Impact |

# EXHIBIT S

# EMPLOYMENT OPPORTUNITY CHRONOLOGY AND EVIDENCE INDEX

Prepared as a factual chronology of employment opportunities identified by Plaintiff.

Underlying emails, letters, and other source records are intentionally left as placeholders and should be inserted only when available.

<b>Purpose:</b> To organize the chronology and identify the documentary evidence corresponding to each entry without converting reported events into unsupported factual or causal assertions.

<b>Important evidentiary note:</b> This exhibit does not independently establish why any employer made a hiring decision. Where the spreadsheet records a statement attributed to an employer representative, the underlying communication is identified as a placeholder for attachment and verification.

# EXHIBIT S — INDEX

| <b>Section</b> | <b>Description</b> |
|---|---|
| Part I | Historical Employment Impact — S-1 |
| Part II | Documented Recent Employment Opportunities — S-2 through S-6 |
| Part III | Opportunities Paused by Plaintiff Due to U5 Concerns — S-7 and S-8 |
| Part IV | Non-U5 Employment Outcome — S-9 |
| Part V | Master Chronology |
| Evidence Index | S-1-A through S-9-C placeholders for underlying records |

<b>Organization principle.</b> The entries below preserve the wording and distinctions reflected in the uploaded chronology. In particular, S-9 is kept separate because the spreadsheet identifies the stated reason as a non-active Series 7 license rather than the U5 disclosure.

# PART I — HISTORICAL EMPLOYMENT IMPACT

## S-1 — VALIC Finacial Advisors, INC. — Financial Advisor

| | |
|---|---|
| <b>Date / Period</b> | 10/172007 -12/19/2007 |
| <b>Position</b> | Financial Advisor |
| <b>Chronology Entry</b> | Final Interview / Completed Interview Process / Next Steps Moving Forward |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | U5 reviewed / hiring process stopped |
| <b>Business Contact</b> | NA |
| <b>Result / Statement Recorded</b> | NA |
| <b>Evidence Source Listed</b> | FINRA Portal / Exhibit S.1 |
| <b>Supporting Placeholders</b> | S-1-A, S-1-B |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

# PART II — DOCUMENTED RECENT EMPLOYMENT OPPORTUNITIES

## S-2 — Northwestern Mutual / The Zara Group — Wealth Advisor

| | |
|---|---|
| <b>Date / Period</b> | 12/16/2024 -2/27/2025 |
| <b>Position</b> | Wealth Advisor |
| <b>Chronology Entry</b> | Final Interview / Completed Interview Process / Next Steps Moving Forward |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | U5 reviewed / hiring process stopped |
| <b>Business Contact</b> | Cassandra Clemens / Herman I. Jimerson / Kevin Cantrell |
| <b>Result / Statement Recorded</b> | Phone conversation with Kevin Cantrell stating we can't move forward due to listing on U5 |
| <b>Evidence Source Listed</b> | Email / Exhibit S Zara Group / Exhibit S Northwestern / Exhibit S Moving Forward |
| <b>Supporting Placeholders</b> | S-2-A, S-2-B, S-2-C |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

## S-3 — Fidelity Investments — Central Relationship Manager

| | |
|---|---|
| <b>Date / Period</b> | 2023-12-27 00:00:00 |
| <b>Position</b> | Central Relationship Manager |
| <b>Chronology Entry</b> | Final Interview / Completed Interview Process / Next Steps Moving Forward |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | U5 reviewed / hiring process stopped |
| <b>Business Contact</b> | NA |
| <b>Result / Statement Recorded</b> | Phone conversation with Representative stating we can't move forward and was unable to discuss details |
| <b>Evidence Source Listed</b> | Direct email 12/27/2023 |
| <b>Supporting Placeholders</b> | S-3-A, S-3-B |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

## S-4 — New York Life — Financial Advisor

| | |
|---|---|
| <b>Date / Period</b> | 2017-12-19 00:00:00 |
| <b>Position</b> | Financial Advisor |
| <b>Chronology Entry</b> | Final Interview / Completed Interview Process / Next Steps Moving Forward |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | U5 reviewed / hiring process stopped |
| <b>Business Contact</b> | Charmaine Goodman / Sydney Watson |
| <b>Result / Statement Recorded</b> | Phone conversation with Charmaine Goodman she stated unable to move forward due to U5 |
| <b>Evidence Source Listed</b> | Email 12/19/2017 |
| <b>Supporting Placeholders</b> | S-4-A, S-4-B |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

## S-5 — New York Life — Financial Advisor

| | |
|---|---|
| <b>Date / Period</b> | 5/26/2026 - 6/26/2026 |
| <b>Position</b> | Financial Advisor |
| <b>Chronology Entry</b> | Final Interview / Completed Interview Process / Next Steps Moving Forward |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | U5 reviewed / hiring process stopped |
| <b>Business Contact</b> | Byron Goodrich |
| <b>Result / Statement Recorded</b> | Phone conversation with Byron Goodrich he stated unable to move forward due to U5. Received Letter |
| <b>Evidence Source Listed</b> | Email Exhibit S NYL 2026 |
| <b>Supporting Placeholders</b> | S-5-A, S-5-B, S-5-C |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

## S-6 — Synergy Wealth Solutions / Mass Mutual — Financial Advisor

| | |
|---|---|
| <b>Date / Period</b> | 6/1/2026 - 8/6/2026 |
| <b>Position</b> | Financial Advisor |
| <b>Chronology Entry</b> | Final Interview / Completed Interview Process / Next Steps Moving Forward |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | U5 reviewed / hiring process stopped |
| <b>Business Contact</b> | Carrie Bischof / Stephanie Bowman / Andrew Herr |
| <b>Result / Statement Recorded</b> | After responding to U5 questions; received a letter from Synergy |
| <b>Evidence Source Listed</b> | Exhibit S Synergy decline |
| <b>Supporting Placeholders</b> | S-6-A, S-6-B, S-6-C |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

# PART III — OPPORTUNITIES PAUSED BY PLAINTIFF DUE TO U5 CONCERNS

## S-7 — Principal Financial — Financial Advisor

| | |
|---|---|
| <b>Date / Period</b> | 1/31/2025 -4/2/2025 |
| <b>Position</b> | Financial Advisor |
| <b>Chronology Entry</b> | Final Interview / I paused the interview process due to US concerns |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | I paused the process / hiring process stopped |
| <b>Business Contact</b> | Jane Choi / Patrick Dolan |
| <b>Result / Statement Recorded</b> | I paused the hiring process due to U5 concerns |
| <b>Evidence Source Listed</b> | Direct emails from Jan-April 2025 |
| <b>Supporting Placeholders</b> | S-7-A, S-7-B |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

## S-8 — State Farm — Sales Leader

| | |
|---|---|
| <b>Date / Period</b> | 4/9/2025 - 1/16/2026 |
| <b>Position</b> | Sales Leader |
| <b>Chronology Entry</b> | Final Interview / I paused the interview process due to US concerns |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | I paused the process / hiring process stopped |
| <b>Business Contact</b> | Andi Wilson / Todd Hoyt |
| <b>Result / Statement Recorded</b> | I paused the hiring process due to U5 concerns |
| <b>Evidence Source Listed</b> | Email 1/16/2026 |
| <b>Supporting Placeholders</b> | S-8-A, S-8-B |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

# PART IV — NON-U5 EMPLOYMENT OUTCOME

## S-9 — Fidelity Investments — Investment Consultant

| | |
|---|---|
| <b>Date / Period</b> | 2026-05-21 00:00:00 |
| <b>Position</b> | Investment Consultant |
| <b>Chronology Entry</b> | Did not move forward due to non active Series 7 license |
| <b>U5 Involvement (as reported in source spreadsheet)</b> | Application reviewed / hiring process stopped |
| <b>Business Contact</b> | NA |
| <b>Result / Statement Recorded</b> | NA |
| <b>Evidence Source Listed</b> | Email 5/21/2026 Req 2124757 |
| <b>Supporting Placeholders</b> | S-9-A |

*Evidence status: The referenced source documents are not reproduced in this chronology. Each placeholder should be replaced with the actual email, letter, or other record before filing if the record is intended to substantiate the entry.*

# PART V — MASTER CHRONOLOGY

| <b>Ex. </b> | <b>Date / Period</b> | <b>Employer / Position</b> | <b>Recorded Event / U5 Treatment</b> | <b>Evidence</b> |
|---|---|---|---|---|
| S-7 | 1/31/2025 -4/2/2025 | Principal Financial<br/>Financial Advisor | Final Interview / I paused the interview process due to US concerns<br/><b>U5:</b> I paused the process / hiring process stopped | S-7-A, S-7-B |
| S-1 | 10/172007 -12/19/2007 | VALIC Fiacial Advisors, INC.<br/>Financial Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward<br/><b>U5:</b> U5 reviewed / hiring process stopped | S-1-A, S-1-B |
| S-2 | 12/16/2024 -2/27/2025 | Northwestern Mutual / The Zara Group<br/>Wealth Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward<br/><b>U5:</b> U5 reviewed / hiring process stopped | S-2-A, S-2-B, S-2-C |
| S-4 | 2017-12-19 00:00:00 | New York Life<br/>Financial Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward<br/><b>U5:</b> U5 reviewed / hiring process stopped | S-4-A, S-4-B |
| S-3 | 2023-12-27 00:00:00 | Fidelity Investments<br/>Central Relationship Manager | Final Interview / Completed Interview Process / Next Steps Moving Forward<br/><b>U5:</b> U5 reviewed / hiring process stopped | S-3-A, S-3-B |
| S-9 | 2026-05-21 00:00:00 | Fidelity Investments<br/>Investment Consultant | Did not move forward due to non active Series 7 license<br/><b>U5:</b> Application reviewed / hiring process stopped | S-9-A |
| S-8 | 4/9/2025 - 1/16/2026 | State Farm <br/>Sales Leader | Final Interview / I paused the interview process due to US concerns<br/><b>U5:</b> I paused the process / hiring process stopped | S-8-A, S-8-B |
| S-5 | 5/26/2026 - 6/26/2026 | New York Life<br/>Financial Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward<br/><b>U5:</b> U5 reviewed / hiring process stopped | S-5-A, S-5-B, S-5-C |
| S-6 | 6/1/2026 - 8/6/2026 | Synergy Wealth Solutions / Mass Mutual<br/>Financial Advisor | Final Interview / Completed Interview Process / Next Steps Moving Forward<br/><b>U5:</b> U5 reviewed / hiring process stopped | S-6-A, S-6-B, S-6-C |

<b>Chronology caution.</b> Dates and descriptions in this table are transcribed or condensed from the uploaded spreadsheet. They should be cross-checked against the underlying records before filing.

# EVIDENCE INDEX — PLACEHOLDERS FOR UNDERLYING RECORDS

The following index identifies the documentary record contemplated for each chronology entry. No placeholder below should be treated as an attached exhibit until the underlying record is actually inserted and verified.

| <b>Ref.</b > | <b>Underlying Record</b> | <b>Status / Filing Note</b> |
|---|---|---|
| S-1-A | VALIC — interview-process documentation | Placeholder for underlying email(s), portal record(s), or other contemporaneous documentation. |
| S-1-B | VALIC — supporting historical record | Placeholder for additional source supporting the chronology entry. |
| S-2-A | Northwestern Mutual / Zara Group — email correspondence | Placeholder for correspondence concerning the application/interview process. |
| S-2-B | Northwestern Mutual / Zara Group — U5-related communication | Placeholder for the communication described in the chronology. |
| S-2-C | Northwestern Mutual / Zara Group — follow-up communication | Placeholder for additional supporting email or letter. |
| S-3-A | Fidelity Investments (2023) — email dated 12/27/2023 | Placeholder for the underlying email. |
| S-3-B | Fidelity Investments (2023) — supporting communication | Placeholder for any related communication or record. |
| S-4-A | New York Life (2017) — email dated 12/19/2017 | Placeholder for the underlying email. |
| S-4-B | New York Life (2017) — supporting communication | Placeholder for any related communication or record. |
| S-5-A | New York Life (2026) — correspondence with Byron Goodrich | Placeholder for the underlying correspondence. |
| S-5-B | New York Life (2026) — decline letter | Placeholder for the letter referenced in the chronology. |
| S-5-C | New York Life (2026) — supporting email | Placeholder for any additional related communication. |
| S-6-A | Synergy Wealth Solutions / MassMutual — correspondence | Placeholder for the underlying correspondence. |
| S-6-B | Synergy Wealth Solutions / MassMutual — U5 response/questions | Placeholder for the communications concerning the U5 questions. |
| S-6-C | Synergy Wealth Solutions / MassMutual — decline letter | Placeholder for the letter referenced in the chronology. |
| S-7-A | Principal Financial — email correspondence, Jan.–Apr. 2025 | Placeholder for the underlying emails. |
| S-7-B | Principal Financial — supporting communication | Placeholder for any additional related record. |
| S-8-A | State Farm — email dated 1/16/2026 | Placeholder for the underlying email. |
| S-8-B | State Farm — supporting communication | Placeholder for any additional related record. |
| S-9-A | Fidelity Investments (2026) — email dated 5/21/2026, Req. 2124757 | Placeholder for the underlying email. The chronology records the stated reason as an inactive Series 7, not a U5 determination. |

<b>Recommended filing assembly:</b> Insert each underlying document immediately after its corresponding chronology section, using the reference label shown above (for example, S-2-A, S-2-B, S-2-C). Do not create or substitute documents merely to fill a placeholder.

<b>Source file used to prepare this exhibit:</b> Uploaded employment-opportunity chronology spreadsheet. This PDF is an organizational exhibit and does not add independent evidence beyond the information supplied in that spreadsheet.

Exhibit S Synergy Decline

Summarized by Yahoo Scout

Was this message summary helpful?

SB

Stephanie Bowman
To: me · Thu, Aug 6 at 11:06 AM

Hi David,

I wanted to follow up regarding your application with Synergy Wealth Solutions. After further discussion among our leadership team and Home Office, we have concluded that we will not be moving forward at this time.

We appreciate the time and effort you have invested throughout the process and your interest in joining our firm. We wish you all the best in your future endeavors.

Please let me know if you have any questions.

Thank you,
Stephanie
[redacted]

Exhibit S Zara Group 2024

Northwestern Mutual

# ID: David Murray

Inbox

## Zoom Meeting Invitation

Reply

You are invited to a scheduled Zoom meeting by Cassandra Clemens from The Zara Group.

Note

Attend the scheduled Zoom meeting with Cassandra Clemens (Meeting ID: 437 224 8742 Passcode: v5wPup). Find your local number for one tap mobile or dial by location. here

Summarized by Yahoo Scout

Was this message summary helpful?

cassandra.clemens@nm.com

To: me, Cc: herman.l.jimerson@nm.com · Mon, Dec 16, 2024 at 3:06 PM

Cassandra Clemens is inviting you to a scheduled Zoom meeting.

Join Zoom Meeting

# EXHIBIT T

# REVISED DOCUMENTARY DAMAGES ANALYSIS

Lost Compensation, Post-Citi Unemployment, Lost Opportunities,<br/>Earning Capacity, Mitigation, and Other Economic Damages

<b>Updated through September 23, 2026.</b> This revision incorporates the June 30, 2026 elimination of Plaintiff's Citi position, the resulting period of unemployment, and the May 29, 2026 communication from Raymond James & Associates concerning the U5.

<b>Central damages model:</b> approximately <b>$814,880</b> in illustrative four-year compensation differential, plus approximately <b>$25,150</b> in baseline compensation value for the post-Citi unemployment period through September 23, 2026, producing approximately <b>$840,030</b> in gross illustrative economic exposure before mitigation, benefits adjustments, probability-of-employment adjustments, taxes, discounting, or legal limitations.

*<b>Critical qualification:</b> The $840,030 figure is an illustrative economic-loss model, not a claim that every dollar has been proven or is legally recoverable. The Citi position elimination is not attributed to Raymond James. The model instead treats the June 30 termination as the starting point for a potentially continuing period of economic loss while Plaintiff sought comparable employment.*

# I. EXECUTIVE SUMMARY

| <b>Component</b> | <b>Presently ascertainable basis</b> | <b>Illustrative amount</b> |
|---|---|---|
| Four-year compensation differential | State Farm, Citi and illustrative Fidelity compensation differentials compared with approximately $108,000 annual baseline. | $814,880 |
| Post-Citi unemployment through 9/23/2026 | June 30–September 23, 2026 = 85 days; $108,000 annual baseline = $295.89/day. | $25,151 |
| Current gross illustrative exposure | Four-year model + post-Citi baseline unemployment period. | $840,031 |
| Benefits / incentives / retirement | Potentially recoverable economic components, but not separately added to avoid double counting. | Not yet quantified |
| Continuing unemployment after 9/23/2026 | Potential ongoing loss subject to mitigation and proof of causation. | Not yet quantified |
| Future earning capacity | Potential long-term effect on financial-services career path; requires expert/documentary support. | Not yet quantified |

*<b>Calculation note:</b> 85 days × ($108,000 ÷ 365) = approximately $25,151. This is a gross baseline calculation. Actual lost wages should be adjusted for any severance, unemployment benefits where legally relevant, replacement earnings, consulting income, and other mitigation items as appropriate to the claim.*

# II. POST-CITI UNEMPLOYMENT AND RAYMOND JAMES NOTICE

| <b>Date</b> | <b>Event</b> | <b>Damages significance</b> |
|---|---|---|
| May 29, 2026 | Plaintiff notified Raymond James concerning the continuing U5 issue and professional consequences. Raymond James responded that it had no evidence the U5 disclosure was incorrect and therefore could not amend the U5 or support expungement. | Documents notice to Raymond James before Citi employment ended; potentially relevant to notice and subsequent conduct, but does not itself establish causation of Citi's position elimination. |
| June 30, 2026 | Plaintiff's Citi position ended because the position was eliminated. | Establishes the beginning of the presently documented unemployment period. The elimination itself is not attributed to Raymond James. |
| July 1–September 23, 2026 | Plaintiff remained unemployed while pursuing replacement employment opportunities. | Potential actual economic loss; mitigation evidence should document applications, interviews, recruiting communications, and any U5-related outcomes. |
| September 23, 2026 | Current damages calculation date. | 85 days of post-Citi baseline compensation value are included in the revised model. |

<b>Raymond James response — May 29, 2026:</b> "Raymond James & Associates does not have any evidence that the U5 disclosure you are seeking to expunge is incorrect. As a result, Raymond James cannot amend your U5 or support your request for expungement."

*<b>Evidentiary treatment:</b> The response should be attached as a primary documentary exhibit (recommended reference: <b>T-1-A</b>) rather than paraphrased as proof of causation. The document supports notice and Raymond James's stated position. It does not, standing alone, establish that Raymond James caused the Citi elimination or any particular hiring decision.*

# III. REVISED $700,000+ ECONOMIC-LOSS MODEL

The underlying four-year model remains an illustrative compensation-differential calculation. The new post-Citi unemployment component is presented separately so the court can distinguish an actual period of unemployment from a hypothetical compensation differential.

| <b>Opportunity / loss period</b> | <b>Annual compensation assumption</b> | <b>Annual differential vs. $108,000</b> | <b>Four-year differential</b> |
|---|---|---|---|
| State Farm Sales Leader | $200,000 | $92,000 | $368,000 |
| Citi Wealth Investment Sales Senior Lead / SVP | $176,720 | $68,720 | $274,880 |
| Fidelity Financial Consultant — illustrative total-compensation reference | $151,000 | $43,000 | $172,000 |
| Subtotal — illustrative four-year differential | | | $814,880 |
| Post-Citi unemployment: 6/30/2026–9/23/2026 | $108,000 baseline | $295.89/day × 85 days | $25,151 |
| Current gross illustrative economic exposure | | | $840,031 |

*<b>Important double-counting safeguard:</b> The $840,031 figure should not be presented as a mathematically automatic award. If a replacement position is used as the basis for a four-year differential beginning in 2026, the actual Citi unemployment period may overlap that model. A final economist's calculation should choose a non-overlapping start date and subtract actual mitigation.*

## IV. CONTINUING UNEMPLOYMENT SENSITIVITY

At the approximately $108,000 historical annual baseline, the gross value of continued unemployment can be expressed without predicting how long unemployment will last:

| <b>Unemployment period after 6/30/2026</b> | <b>Gross baseline compensation value</b> |
|---|---|
| 85 days — through 9/23/2026 | $25,151 |
| 3 months | $27,000 |
| 6 months | $54,000 |
| 9 months | $81,000 |
| 12 months | $108,000 |
| 18 months | $162,000 |
| 24 months | $216,000 |

*These figures are mathematical sensitivity values only. They are not predictions and do not establish that the U5 caused the entire unemployment period. The relevant proof will be the employment search, employer communications, actual replacement opportunities, and expert analysis where appropriate.*

# V. OPPORTUNITY AND CAUSATION ANALYSIS

| <b>Exhibit S entry</b> | <b>Treatment in revised damages analysis</b> |
|---|---|
| S-1 VALIC (2007) | Historical evidence. Compensation and causation require underlying records; not assigned a separate dollar figure in the current model. |
| S-2 Northwestern Mutual / Zara Group (2024–2025) | Potential U5-related lost opportunity. Use actual communications and compensation materials; no fixed amount added without proof. |
| S-3 Fidelity (2023) | Potential U5-related lost opportunity. Use the specific requisition and employer communication; no fixed amount added without proof. |
| S-4 New York Life (2017) | Potential U5-related lost opportunity. Use underlying communication and compensation plan; no fixed amount added without proof. |
| S-5 New York Life (2026) | Potential U5-related lost opportunity. The reported decline letter should be attached and analyzed with the compensation structure. |
| S-6 Synergy / MassMutual (2026) | Potential U5-related lost opportunity. The decline letter and U5 communications should establish the factual basis before a dollar value is assigned. |
| S-7 Principal (2025) | Plaintiff paused the process because of U5 concerns. This is not a direct employer rejection; damages require proof of the opportunity's value and likely employment. |
| S-8 State Farm (2025–2026) | Plaintiff paused the process because of U5 concerns. State Farm compensation is used only as an illustrative differential; causation and probability of employment require evidence. |
| S-9 Fidelity Investment Consultant (5/21/2026) | Kept outside the U5-caused core model because the chronology records an inactive Series 7 as the stated reason. |

*<b>Why this matters:</b> The revised exhibit does not treat every job opportunity as a guaranteed loss. It identifies which opportunities can potentially support damages and which require additional proof. This preserves the distinction between documented employment consequences and an ultimate causation finding.*

# VI. MITIGATION AND OFFSET EVIDENCE

Because Plaintiff's Citi position ended through position elimination, the post-June 30 period should be documented as an active mitigation period. The following records should be assembled to establish reasonable efforts and actual economic results:

1. Applications and requisitions submitted after June 30, 2026.

2. Recruiter emails, interview invitations, interview notes, assessments, and hiring-stage communications.

3. All U5/CRD-related communications and any employer statements concerning hiring decisions.

4. Actual employment obtained after June 30, 2026, including compensation and benefits.

5. Unemployment compensation, severance, consulting income, commissions, or other replacement income, where relevant to the applicable claim.

6. Evidence of continuing applications for financial-advisory, banking, compliance, risk, investment, and related positions.

7. Documentation of any licensing or sponsorship barrier, including Series 7 status, where it affected a particular opportunity.

*<b>Mitigation principle:</b> The damages calculation should ultimately subtract actual replacement earnings and avoid counting the same period twice. The existence of substantial job-search activity can support the factual record concerning mitigation, but it does not by itself establish that every unsuccessful application resulted from the U5.*

## VII. EARNING CAPACITY AND CAREER-PATH EVIDENCE

| <b>Evidence</b> | <b>Why it matters</b> |
|---|---|
| 20+ years in banking / financial services | Supports historical experience and a long-established career path, but should be documented through resumes, employment records, licenses, and compensation history. |
| Prior financial-advisor / investment experience | May support comparison to financial-advisory compensation opportunities and registration-dependent career progression. |
| Series 63 / Series 65 and insurance licenses | May establish current licensing credentials and the types of roles for which Plaintiff remained qualified. |
| Expired Series 7 / Series 31 | Must be analyzed separately because some opportunities may have been unavailable for licensing reasons rather than U5 reasons. |
| Multiple documented employment pursuits | Supports the mitigation record and provides evidence from which an economist/vocational expert could analyze career interruption. |
| Compensation history | W-2s, tax returns, pay records, bonuses, and benefits can establish the baseline and trend needed for a future earning-capacity model. |

*<b>Recommended expert model:</b> If future earning capacity or front-pay is pursued, an economist/vocational expert should calculate probability-adjusted earnings using actual historical compensation, realistic hiring probability, expected tenure, raises, variable compensation, benefits, mitigation, and present-value discounting. The expert should also address alternative explanations such as licensing requirements and ordinary labor-market conditions.*

## VIII. LEGAL AND EVIDENTIARY FRAMEWORK

Missouri Revised Statutes § 516.100 provides that, for the limitations provisions to which it applies, a cause of action generally accrues when resulting damage is sustained and capable of ascertainment; where there is more than one item of damage, the statute addresses accrual by reference to the last item so that resulting damage can be recovered and complete relief obtained. ■cite■turn0search5■

RSMo § 516.120 generally provides a five-year period for specified actions, including certain actions for injury to rights not otherwise enumerated. RSMo § 516.140 provides a two-year period for specified claims including libel, slander, injurious falsehood, and certain wage claims. The limitations period applicable to Plaintiff's actual causes of action must be determined claim-by-claim; this damages exhibit does not resolve that issue. ■cite■turn0search4■turn0search8■

If a Missouri Human Rights Act employment claim is actually pleaded, RSMo § 213.111 currently provides that the court may award actual and punitive damages, but subsection 4 imposes statutory limitations on the sum of actual damages—including future pecuniary losses and specified nonpecuniary losses—and punitive damages, while subsection 5 places the burden on the plaintiff to prove the unlawful decision or action was because of the protected classification and was the direct proximate cause of the claimed damages. ■cite■turn0search0■

*<b>Application to this exhibit:</b> The economic-loss calculation and the legally recoverable award are separate questions. Exhibit T documents the potential economic magnitude of the claimed loss; the court must still determine which damages theories are legally available, which periods are recoverable, what causation is established, and what statutory or common-law limitations apply.*

# IX. DOCUMENTARY EVIDENCE INDEX FOR DAMAGES

| <b>Ref.</b> | <b>Document / record</b> | <b>Purpose</b> |
|---|---|---|
| T-1-A | Raymond James May 29, 2026 response | Notice and Raymond James's stated position concerning amendment/expungement; not standalone proof of causation. |
| T-1-B | Citi position-elimination notice / separation documentation | Establishes June 30, 2026 end of employment and reason given by Citi. |
| T-1-C | Citi 2025–2026 pay records, W-2, benefits and bonus records | Establishes actual compensation baseline. |
| T-2-A | Post-June 30, 2026 application log | Establishes mitigation efforts and chronology. |
| T-2-B | Post-June 30 recruiter/employer communications | Supports individual opportunity and causation analysis. |
| T-2-C | Post-June 30 U5/CRD-related correspondence | Supports any documented link between U5 review and hiring outcome. |
| T-3-A through T-3-I | Exhibit S underlying records | Documents the individual employment opportunities identified in the chronology. |
| T-4-A | State Farm compensation posting / requisition | Supports illustrative compensation assumption. |
| T-4-B | Citi Wealth Investment Sales Senior Lead/SVP posting | Supports illustrative compensation assumption. |
| T-4-C | Fidelity Financial Consultant compensation disclosure | Supports the structure of Fidelity compensation; specific role evidence should control. |
| T-5-A | Tax returns / W-2s / 1099s | Supports historical earnings and mitigation. |
| T-5-B | Benefits and retirement records | Supports benefits differential if separately calculated. |
| T-6-A | Vocational/economic expert report, if obtained | Supports probability-adjusted future earning capacity and non-overlapping damages calculation. |

<b>Recommended assembly:</b> Attach the actual May 29 Raymond James response as T-1-A, Citi's position-elimination documentation as T-1-B, and the post-June 30 employment-search records behind T-2-A through T-2-C. Cross-reference the individual Exhibit S records rather than duplicating them unnecessarily.

# X. CONCLUSION OF DAMAGES MODEL

As of September 23, 2026, the documentary record supports a revised presentation of approximately <b>$840,031 in gross illustrative economic exposure</b>: approximately $814,880 from the existing four-year compensation-differential model and approximately $25,151 representing the baseline value of 85 days of unemployment following the June 30, 2026 Citi position elimination.

This amount should be described as a <b>model of potential economic loss</b>, not as an established or guaranteed damages award. The Citi position elimination is treated as an independent employment event; the potentially actionable question is whether the continuing U5/CRD issue impaired Plaintiff's ability to mitigate that loss through comparable employment after June 30, 2026.

The model should be updated periodically as actual employment, compensation, mitigation, and documentary evidence develop. Any final damages report should eliminate overlapping periods, account for actual earnings and benefits, address probability of employment, and apply whatever legal limitations govern the claims actually submitted to the court.

*<b>Prepared as a documentary damages framework.</b> This exhibit does not purport to resolve ultimate liability, causation, admissibility, or the amount of damages a court or jury may award.*

# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY

## STATE OF MISSOURI

DAVID MURRAY, Petitioner,

v.

FINANCIAL INDUSTRY REGULATION AUTHORITY, INC., Respondent.

| | |
|---|---|
| **Case No.** | 25SL-CC12086 |
| **Division** | 21 |

# EXHIBIT V-1

## RESPONDENT FINRA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PETITIONER'S AMENDED PETITION

Selected pages from the electronically filed memorandum, preserving the original court pagination.

### Purpose of Exhibit

This exhibit is offered to document FINRA's own litigation position concerning the identity of the party responsible for the termination disclosure at issue. In its filed memorandum, FINRA repeatedly characterized Petitioner's underlying dispute over the Form U5 termination information as a dispute with his former employer rather than with FINRA.

The exhibit is limited to what the memorandum states. FINRA's statements are presented as litigation arguments and characterizations; they are not represented here as judicial findings, admissions of liability, or proof by themselves that the underlying Form U5 information was false, defamatory, or otherwise unlawful.

### Filed Source

Respondent FINRA's Memorandum in Support of Motion to Dismiss Petitioner's Amended Petition, Case No. 25SL-CC12086, Division 21, Circuit Court of St. Louis County, Missouri. The source memorandum bears the electronic filing notation: "Electronically Filed - ST LOUIS COUNTY - March 11, 2026 - 03:16 PM."

### Source pages reproduced in this exhibit

| Exhibit page | Original source page | Why included |
|---|---|---|
| V-1-1 | 1 | Caption, filing title, and introduction identifying the CRD/U5 dispute. |
| V-1-2 | 2 | FINRA's statement that the dispute is with the former employer and not FINRA. |
| V-1-3 | 9 | Footnote 9 again stating the dispute is with the former employer, not FINRA. |
| V-1-4 | 18 | Beginning of Section V.D, "Murray's Dispute is Not With FINRA." |
| V-1-5 | 19 | FINRA's express statement that the dispute is with the former employer. |

| Exhibit page | Original source page | Why included |
|---|---|---|
| V-1-6 | 20 | Conclusion and signature of FINRA counsel Derick C. Albers. |

# EXHIBIT V-1 — EVIDENTIARY SUMMARY

The following three passages are the principal statements for which the selected pages are included. The quotations below are taken from the filed memorandum and are paired with their original source-page locations.

### 1. Page 2 — Introduction

*"Finally, to the extent Murray claims the termination disclosure is false or defamatory in nature, Murray's dispute is with his former employer and not with FINRA."*

### 2. Page 9 — Footnote 9

*"In addition, or the alternative, as set forth below, the Amended Petition and the expungement claims set forth therein must be dismissed with prejudice because FINRA's regulatory immunity precludes Murray's expungement request, the claims are time barred, and/or Murray's dispute is with his former employer, not FINRA."*

### 3. Pages 18–19 — Section V.D

*The memorandum is headed "D. Murray's Dispute is Not With FINRA." On page 19, FINRA states: "Murray's dispute is not with FINRA; his dispute is with his former employer."*

*The same section further states that Murray's former employer "submitted the language that FINRA maintains in CRD and discloses in BrokerCheck," and concludes that, whether or not Murray has a cause of action against the former employer for the termination disclosure, "he has no claim against FINRA."*

## Evidentiary significance

The selected pages establish the content of FINRA's own filed position: FINRA distinguished itself from the former employer that submitted the termination information and expressly directed the dispute over that information toward the former employer. This is relevant to the identification of the alleged source of the termination disclosure and to the procedural history of Petitioner's effort to obtain relief concerning that disclosure.

**Important limitation:** This exhibit does not, standing alone, establish the truth or falsity of the U5 disclosure, impose liability on any former employer, establish defamation, or establish that any particular remedy is legally available. Those issues require the other evidence and legal authorities in the record.

## Authentication / identification

The attached pages are reproductions of pages 1, 2, 9, 18, 19, and 20 of the filed FINRA memorandum. Original court pagination and the March 11, 2026 electronic-filing notation have been preserved on the reproduced pages.

# EXHIBIT V-1

## ATTACHED SOURCE PAGES

The following pages are reproduced from the filed FINRA memorandum without substantive alteration. Original source-page numbers are retained.

Electronically Filed - ST LOUIS COUNTY - March 11, 2026 - 03:16 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DAVID MURRAY,<br><br>Petitioner,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATION AUTHORITY, INC.,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 25SL-CC12086<br><br>Division 21 |

**RESPONDENT FINRA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PETITIONER'S AMENDED PETITION**

## I. INTRODUCTION

Respondent Financial Industry Regulatory Authority, Inc. ("FINRA") is a self-regulatory organization ("SRO") responsible for regulating broker-dealer firms and their associated persons subject to oversight by the Securities and Exchange Commission ("SEC"). FINRA is statutorily mandated to collect and maintain registration information about securities professionals, including information about the reasons such professionals are terminated by FINRA's member firms. FINRA complies with its statutory mandate by collecting and maintaining registration information in the Central Registration Depository ("CRD"®).

In this case, Petitioner David Murray ("Petitioner" or "Murray") seeks to expunge information from CRD regarding the reason a FINRA-member firm terminated his employment more than twenty (20) years ago. The Amended Petition should be dismissed for several independent reasons. First, Murray has failed to state a claim upon which relief

Electronically Filed - ST LOUIS COUNTY - March 11, 2026 - 03:16 PM

can be granted. Second, regulatory immunity bars Murray's expungement claim against FINRA. Third, Murray's claim is time barred. Finally, to the extent Murray claims the termination disclosure is false or defamatory in nature, Murray's dispute is with his former employer and not with FINRA. For these reasons, the Court should dismiss the Amended Petition *with prejudice*.

## II. THE AMENDED PETITION[1]

Murray was a registered representative who worked at a FINRA-member firm. *See* Amended Petition, ¶ 4. According to Murray, his employment at the firm, which he did not name in the lawsuit, was terminated more than twenty (20) years ago. *Id.* Murray alleges that his former employer filed a Form U5 that included language suggesting he was terminated for "policy reasons," though no disciplinary, regulatory, or customer-complaint action was ever initiated. *Id.* at ¶ 5. Without providing any details, Murry alleges that the Form U5 language submitted by his former employer is false, misleading, and unjust, and that it harms his reputation. *Id.* at ¶ 8. Murray does not cite any Missouri or federal statute to support his claim for expungement of the registration information because none exists. Rather, he attempts to rely on the Court's equitable authority and FINRA Rule 2080 to

[1] Citations herein to the Amended Petition refer to the most recent Amended Petition filed by Murray on or about November 10, 2025 (a copy of which was also filed by Murray with the Court, along with a Notice of Hearing, on or about January 15, 2026). Nothing herein shall be construed as an acknowledgement or admission as to the validity or truth of any of the allegations asserted in the Amended Petition.

Electronically Filed - ST LOUIS COUNTY - March 11, 2026 - 03:16 PM

In this case, there is no applicable statute authorizing this Court to expunge Murray's termination information maintained by FINRA in CRD. Thus, this Court has no equitable or inherent authority to expunge records filed by a former employer stating the reason for Murray's termination, which is information FINRA maintains in CRD as required by the Exchange Act. Indeed, just last year on June 10, 2025, this Honorable Court (Judge Kerr presiding) recognized and confirmed that there is no cause of action in Missouri for equitable expungement of FINRA records, when it entered an Order and Judgment dismissing six (6) lawsuits filed by a plaintiff against FINRA seeking expungement of various customer complaints and arbitrations filed against him that were maintained by FINRA in the CRD database. *See Wolfrum v. FINRA*, Case No. 24SL-CC00694) (Order and Judgment, attached hereto as Exhibit 1.[8] Murray's claims must, therefore, be dismissed *with prejudice* for failure to state a cognizable claim because FINRA rules do not create a substantive cause of action for expungement and there is no private right of action for expungement.[9].

---

[8] Those prior lawsuits in *Wolfrum* involved six (6) separate expungement lawsuits against FINRA that were consolidated into one action before this Honorable Court. In the Order and Judgment dismissing all six (6) of the lawsuits, this Honorable Court dismissed three (3) of the lawsuits without prejudice (presumably because the plaintiff had sufficient time to pursue expungement in a separate arbitration proceeding before FINRA, which applies to customer complaint information filed within the last six (6) years) and dismissed the other three (3) lawsuits with prejudice (relating to older claims in which the statute of limitations had long expired). *See* Order and Judgment, Ex. 1.

[9] In addition, or the alternative, as set forth below, the Amended Petition and the expungement claims set forth therein must be dismissed with prejudice because FINRA's regulatory immunity precludes Murray's expungement request, the claims are time barred, and/or Murray's dispute is with his former employer, not FINRA.

Electronically Filed - ST LOUIS COUNTY - March 11, 2026 - 03:16 PM

The expungement claim here relates to an alleged "false" and "misleading" public disclosure (Amended Petition, at ¶ 8), and the claim is therefore arguably most analogous to a defamation claim, which has a two-year statute of limitations. Mo. Rev. State § 516.140. Missouri law also provides that all "[a]ctions for relief, not herein otherwise provided for" are barred if they are not pursued within 10 years. Mo. Rev. Stat. § 516.110(3). Regardless of which statute of limitation applies,[11] Murray's expungement claim is barred because, based on the face of the Amended Petition, Murray is seeking expungement of a termination disclosure submitted to CRD by Murray's former employer more than twenty (20) years ago. Amended Petition, at ¶¶ 4-5.[12] This further shows that the claims must be dismissed.

**D. Murray's Dispute is Not With FINRA**

Finally, the Amended Petition demonstrates that FINRA is not the proper party to this dispute because to the extent Murray alleges that the termination information his former employer reported to CRD on a Form U5 is false and misleading, Murray's dispute

---

[11] In the alternative, the five-year statute of limitations under section 516.120(1), applying to "*[a]ll actions* upon contracts, *obligations* or liabilities, express or implied, *except those mentioned in section 516.110*, and except upon judgments or decrees of a court of record, and except where a different time is herein limited," may be applicable here. (emphasis added).

[12] A claim accrues for purposes of the statute of limitation "when the damage resulting [from the alleged misconduct] is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. For example, a claim based on a false publication accrues, for purposes of the statute of limitations, on the date the alleged false statement was published. *Brown v. Chicago, R. I. & P. R. Co.*, 212 F.Supp. 832, 836 (W.D. Mo. 1963); *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 598-99 (Mo. 2013).

Electronically Filed - ST LOUIS COUNTY - March 11, 2026 - 03:16 PM

is not with FINRA; his dispute is with his former employer. *See* Amended Petition, at ¶¶ 4-14. Murray acknowledges that his former employer submitted the language that FINRA maintains in CRD and discloses in BrokerCheck. Amended Petition, at ¶¶ 4-5. Indeed, expungement is a type of relief; it is not a cause of action. *Tuberos,* 2026 U.S. Dist. LEXIS 865, 2026 WL 25831, at *7; *see also In re Clark*, No. 2:11–bk–12833, 2012 Bankr. LEXIS 6285, 2012 WL 12261414, *3 (D. Ariz. Bnkr. Apr. 24, 2012) ("U–5 expungement has always been requested as a remedy to a claim [against a former employer for defamation or wrongful termination], and [is] *not as an independent claim itself.*") (emphasis added) (citing cases).[13] Murray himself recognizes as much, which is demonstrated by his attempt to now bring his former employer into this action. *See* Murray's Notice of Motion for Service on Raymond James, 2/23/2026. Whether or not Murray has a cause of action against his former employer for submitting a purportedly false termination disclosure many

[13] The court in *Clark* cited to the following arbitration cases: *In re Vanassche v. Lincoln Fin. Distribs., Inc.*, Arb. No. 10-02482, 2011 WL 3744709 (FINRA Aug. 9, 2011) (claimant requested U5 expungement as part of relief for defamation claim); *In re Bellantuono, et al. v. ICAP Sec. USA LLC*, Arb. No. 09–00567, 2011 WL 2631934 (FINRA June 21, 2011) (claimant requested U5 expungement as part of relief for defamation, wrongful termination, and failure to pay compensation claims); *In re Mahler v. Citigroup Global Mkts., Inc.*, Arb. No. 09–05639, 2011 WL 4889335 (FINRA Sep. 28, 2011) (claimant requested U5 expungement as part of relief for defamation, retaliatory firing, tortious interference with a business relationship, breach of FINRA code of conduct, and unjust enrichment claims); *In re Suntrust Robinson Humphrey, Inc.*, Arb. No. 10–01111, 2011 WL 1938221 (FINRA May 11, 2011) (claimant requested U5 expungement as part of relief for defamation and wrongful termination claims); *In re Lebrew et al. v. BNY Mellon Cap. Mkts.*, LLC, Arb. No. 10–02363, 2011 WL 2578953 (FINRA June 14, 2011) (claimant request U5 expungement as part of relief for wrongful discharge, breach of contract and defamation claims); *In re Stefanis v. Oppenheimer & Co.*, Arb. No. 09–05335, 2011 WL 6596024 (FINRA Dec. 13, 2011) (claimant requested U5 expungement as part of relief for promissory estoppel and wrongful termination claims).

Electronically Filed - ST LOUIS COUNTY - March 11, 2026 - 03:16 PM

years ago, he has no claim against FINRA. Accordingly, the Amended Petition against FINRA must be dismissed.

## VI. CONCLUSION

For the reasons discussed herein, FINRA respectfully requests that this Court grant FINRA's Motion to Dismiss, enter an Order dismissing the Amended Petition and all claims asserted against FINRA *with prejudice*, and provide for such other relief to FINRA as is just and equitable under the circumstances.

Respectfully submitted,

**LEWIS RICE LLC**

By: *_/s/ Derick C. Albers_*
Derick C. Albers, #60966
LEWIS RICE LLC
600 Washington Ave., Ste. 2500
St. Louis, MO 63101
(314) 444-7649 (telephone)
(314) 612-7649 (facsimile)
dalbers@lewisrice.com

*Attorney for Respondent Financial Industry Regulatory Authority, Inc.*

# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY

**STATE OF MISSOURI**

DAVID MURRAY, Petitioner,

v.

FINANCIAL INDUSTRY REGULATION AUTHORITY, INC., Respondent.

| | |
|---|---|
| **Case No.** | 25SL-CC12086 |
| **Division** | 21 |

# EXHIBIT V-2

**FEBRUARY 9, 2026 EMAIL FROM FINRA COUNSEL DERICK C. ALBERS**

Written communication concerning the source of the Form U5 disclosure and FINRA's stated position that relief should be pursued with the prior firm rather than FINRA.

## Purpose of Exhibit

This exhibit places before the Court the February 9, 2026 written communication from Derick C. Albers, counsel for Respondent FINRA. The communication is offered as separate, complementary evidence to Exhibit V-1 because it predates FINRA's March 11, 2026 filed memorandum and expresses substantially the same position in direct correspondence with Petitioner.

## Material statements

Mr. Albers states that the U5 disclosure "was provided by the firm who terminated you," that the termination issue "relates to a termination dispute between you and your prior employer," and that "the relief you seek in this lawsuit needs to be taken up with your prior firm, not FINRA."

The email also states that FINRA intends to seek dismissal because, in counsel's stated position, FINRA has no authority to expunge the termination information.

## Neutral evidentiary characterization

The email is presented as a statement of FINRA counsel's position, not as a judicial finding, admission of liability, or independent proof that the underlying U5 disclosure was false or unlawful. Its relevance is that FINRA's counsel expressly identified the prior employer as the source of the U5 disclosure and directed the requested relief toward that prior employer.

## Document identification

Date: February 9, 2026
Sender: Derick C. Albers, Lewis Rice LLC, counsel for FINRA
Recipient: David Murray
Subject line: not reproduced in the supplied text
Source: contemporaneous written email supplied for inclusion in the court record.

# EXHIBIT V-2 — ATTACHED EMAIL

## VERBATIM TEXT OF THE SUPPLIED FEBRUARY 9, 2026 COMMUNICATION

Mr. Murray,

Good morning. It was nice speaking with you. As we discussed, the U5 disclosure was provided by the firm who terminated you. FINRA has no authority to expunge U5 data, as Rule 2080 only applies to expungements of "disputes with customers." The issue relating to your termination was not a dispute with a customer. As you acknowledge, the U5 disclosure provided by your prior firm relates to a termination dispute between you and your prior employer; it does not have anything to do with a customer dispute.

As a result, the relief you seek in this lawsuit needs to be taken up with your prior firm, not FINRA. FINRA has gotten this types of lawsuits dismissed many times where a person wishes to expunge a termination issue.

The Motion that the Court will take up tomorrow is your motion for default. As we also discussed (and as shown in our sworn affidavits), FINRA has never been properly served in this case. As such, we will be opposing the motion for default as set forth in our papers, which we expect the Court will deny. Then, after proper service, we will be seeking dismissal of the case because FINRA has no authority to expunge.

Best regards,

Derick C. Albers, Lewis Rice, 600 Washington Avenue, Suite 2500, St. Louis, MO 63101-1311, 314.444.7649, dalbers@lewisrice.com

**Filing note:** The email text above is reproduced from the communication supplied for this exhibit. No substantive language has been added to the body of the email. The explanatory material appears only on the preceding exhibit-identification pages.

# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| DAVID MURRAY, | Plaintiff, |
| | v. |
| MORGAN KEEGAN & COMPANY, LLC; | Defendant, |
| RAYMOND JAMES & ASSOCIATES, INC.; and | Defendant, |
| RAYMOND JAMES FINANCIAL, INC., | Defendant. |
| | Case No. ________ |

## EXHIBIT V-3

### MORGAN KEEGAN & COMPANY, INC. — FORM U5

### JAMES T. RITT — FIRM CONTACT AND APPROPRIATE SIGNATORY

**Purpose of Exhibit.** This exhibit contains the Form U5 filed by **Morgan Keegan & Company, Inc.** on October 27, 2005. The Form U5 identifies **James T. Ritt** as the person to contact for further information and as the firm's **"Signature of Appropriate Signatory."** The Firm Acknowledgment states that the signer verified the accuracy and completeness of the information contained in and with the Form U5. The form bears Mr. Ritt's signature dated October 26, 2005.

**Relevance.** Plaintiff offers this exhibit to establish the provenance of the historical Form U5 disclosure and to identify the Morgan Keegan personnel whose documented role may be relevant to discovery concerning the preparation, review, authorization, certification, and submission of the Form U5, as well as the subsequent retention, transfer, and maintenance of related records.

**Limited Purpose.** Plaintiff does not, by this exhibit alone, assert that Mr. Ritt personally made the underlying allegations or that he is individually liable. The exhibit identifies only his documented role on the historical Form U5.

**Historical firm identified on U5:** Morgan Keegan & Company, Inc.
**U5 filing date:** October 27, 2005
**Person to contact for further information:** James T. Ritt
**Appropriate signatory:** James T. Ritt
**Signature date:** October 26, 2005

The following pages reproduce the underlying Form U5.

**MORGAN KEEGAN & COMPANY, LLC(4161)** **Rev. Form U5 (06/2003)**

**Individual Name: MURRAY, DAVID BRIAN (4328456)** **U5 Amendment - Filing ID: 16333509**

**Filing Date: 10/27/2005**

# FORM U5
# UNIFORM TERMINATION NOTICE FOR SECURITIES INDUSTRY REGISTRATION

***NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING***

***Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.***

## 1. GENERAL INFORMATION

| | | | |
|---|---|---|---|
| **First Name:** DAVID | **Middle Name:** BRIAN | **Last Name:** MURRAY | **Suffix:** |
| ***Firm* CRD #:** 4161 | ***Firm* Name:** MORGAN KEEGAN & COMPANY, INC. | **CRD Branch #:** | ***Firm* NFA #:** |
| ***Firm* Billing Code:** SL SA17 | ***Individual CRD #:*** 4328456 | **Individual SSN:** xxx-xx-xxxx | **Individual NFA #:** |
| **Office of Employment Address Street 1:** 11920 NEW HALLS FERRY ROAD | | **Office of Employment Address Street 2:** | |
| **City:** ST. LOUIS | **State:** Missouri | **Country:** USA | **Postal Code:** 63303 |

Private Residence Check Box:

If the Office of Employment address is a private residence, check this box. ☐

## 2. CURRENT RESIDENTIAL ADDRESS

***NOTICE TO THE FIRM***

***This is the last reported residential address. If this is not current, please enter the current residential address.***

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 10/1995 | PRESENT | 16329 HAMPDEN PLACE | FLORISSANT | MO | US | 63034 |

## 7. DISCLOSURE QUESTIONS

IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U4 OR FORM U5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.

**Investigation Disclosure**

| | | YES | NO |
|---|---|---|---|
| **7A.** | Currently is, or at termination was, the individual the subject of an *investigation* or *proceeding* by a domestic or foreign governmental body or *self-regulatory organization* with jurisdiction over *investment-related* businesses? (Note: Provide details of an *investigation* on an Investigation Disclosure Reporting Page and details regarding a *proceeding* on a Regulatory Action Disclosure Reporting Page.) | ○ | ◉ |

**Internal Review Disclosure**

**YES NO**

**7B.** Currently is, or at termination was, the individual under internal review for fraud or wrongful taking of property, or violating *investment-related* statutes, regulations, rules or industry standards of conduct? ○ YES ● NO

### Criminal Disclosure

**YES NO**

**7C.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual:

**1.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any *felony*? ○ ●

**2.** *charged* with any *felony*? ○ ●

**3.** convicted of or did the individual plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to a *misdemeanor involving*: investments or an *investment-related* business, or any fraud, false statements or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? ○ ●

**4.** *charged* with a *misdemeanor* specified in 7(C)(3)? ○ ●

### Regulatory Action Disclosure

**YES NO**

**7D.** While employed by or associated with your *firm*, or in connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual *involved* in any *disciplinary action* by a domestic or foreign governmental body or *self-regulatory organization* (other than those designated as a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange Commission) with jurisdiction over the *investment-related* businesses? ○ ●

### Customer Complaint/Arbitration/Civil Litigation Disclosure

**YES NO**

**7E.** 1. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual named as a respondent/defendant in an *investment-related*, consumer-initiated arbitration or civil litigation which alleged that the individual was *involved* in one or more *sales practice violations* and which:

**(a)** is still pending, or; ○ ●

**(b)** resulted in an arbitration award or civil judgment against the individual, regardless of amount, or; ○ ●

**(c)** was settled for an amount of $10,000 or more. ○ ●

2. In connection with events that occurred while the individual was employed by or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated complaint, not otherwise reported under question 7(E)(1) above, which alleged that the individual was *involved* in one or more *sales practice violations*, and which complaint was settled for an amount of $10,000 or more? ○ ●

3. In connection with events that occurred while the individual was employed or associated with your *firm*, was the individual the subject of an *investment-related*, consumer-initiated, written complaint, not otherwise reported under questions 7(E)(1) or 7(E)(2) above, which:

**(a)** would be reportable under question 14I(3)(a) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*; or ● ○

**(b)** would be reportable under question 14I(3)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*. ○ ●

### Termination Disclosure

**YES NO**

**7F.** Did the individual voluntarily *resign* from your firm, or was the individual discharged or permitted to *resign* from your firm, after allegations were made that accused the individual of:

**1.** violating *investment-related* statutes, regulations, rules or industry standards of conduct? ● ○

**2.** fraud or the wrongful taking of property? ○ ●

**3.** failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?

## 8. SIGNATURE

Please Read Carefully

All signatures required on this Form U5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

8A. FIRM ACKNOWLEDGMENT
This section must be completed on all U5 form filings submitted by the *firm*.

8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT
This section must be completed on amendment U5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

### 8A. FIRM ACKNOWLEDGMENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

**Person to contact for further information**
JAMES T. RITT

**Telephone # of person to contact**
901-524-4165

**Signature of *Appropriate Signatory***
JAMES T. RITT

**Date (MM/DD/YYYY)**
10/26/2005

Type or Print Name of Appropriate Signatory ______________________________

### 8B. INDIVIDUAL ACKNOWLEDGMENT AND CONSENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN SECTION 2 (CURRENT RESIDENTIAL ADDRESS) AND/OR IN PART II OF THE INTERNAL REVIEW DRP.

**Individual Signature**

**Date (MM/DD/YYYY)**

**Type or Print Name of Individual** ______________________________

### INVESTIGATION DRP

No Information Filed

### INTERNAL REVIEW DRP

No Information Filed

### CRIMINAL DRP

No Information Filed

### TERMINATION DRP

This Disclosure Reporting Page is an ○ **INITIAL OR** ◉ **AMENDED** response to report details for affirmative response to ***Question 7F*** on Form U5;

**Check question(s) you are responding to:**

**Termination**

☑**7F(1)** ☐**7F(2)** ☐**7F(3)**

One event may result in more than one affirmative answer to the above items. Use only one DRP to report details related to the same termination. Use a separate DRP for each termination reported.

1. Firm Name:
   MORGAN KEEGAN & COMPANY, INC.

2. Termination Type:
   Discharged

3. Termination Date (MM/DD/YYYY):
   09/27/2005 ◉ **Exact** ○ **Explanation**
   If not exact, provide explanation:

4. Allegation(s):
   CONVERSION OF FUNDS

5. Principal Product Type:
   No Product
   Other Product Types:

6. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the termination. Your information must fit within the space provided.

**REGULATORY ACTION DRP**

No Information Filed

**CUSTOMER COMPLAINT/ARBITRATION/CIVIL LITIGATION DRP**

This Disclosure Reporting Page is an ○ **INITIAL OR** ◉ **AMENDED** response to report details for affirmative responses to ***Questions 7(E)(1), 7(E)(2) and 7(E)(3)*** on Form U5;

**Check question(s) you are responding to:**

**Customer Complaint/Arbitration/Civil Litigation**

☐**7(E)(1)(a)** ☐**7(E)(1)(b)** ☐**7(E)(1)(c)** ☐**7(E)(2)** ☑**7(E)(3)(a)** ☐**7(E)(3)(b)**

One event may result in more than one affirmative answer to the above items. Use only one DRP to report details related to one customer complaint/arbitration/civil litigation. Use a separate DRP for each customer complaint/arbitration/civil litigation.

DRP Instructions:

- In all matters (i.e., customer complaints, arbitrations/CFTC reparations, civil litigations), complete items 1-6.
- If the matter involves only a customer complaint, also complete items 7-12, as appropriate.
- If the customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.
- If the matter involves an arbitration or CFTC reparation, complete items 13-19, as appropriate.
- If the matter involves a civil litigation, complete items 20-27.
- Item 28 is an optional field and applies to all event types (i.e., customer complaint, arbitration/CFTC reparation/civil litigation).

Complete items 1-6 for all events.

1. Customer Name(s):
   NICOLE ALMONTE

2. Customer(s) State of Residence:
   Michigan
   Other state(s) of residence/detail:

3. Employing *Firm* when activities occurred which led to the complaint:
   MORGAN KEEGAN & COMPANY, INC.

4. Allegation(s) and a brief summary of events related to the allegation(s) including dates when activities leading to the allegation(s) occurred:
   CLAIM ALLEGES MISAPPROPRIATION OF FUNDS BY MORGAN KEEGAN BROKER.

5. Principal Product Type:
   No Product
   Other Product Types:

6. Alleged Compensatory Damage Amount: $ 5,000.00

**If the matter involves only a customer complaint, complete items 7-12, as appropriate.**

7. Date Customer Complaint was received (MM/DD/YYYY):
   09/23/2005 (●) **Exact** ( ) **Explanation**
   If not exact, provide explanation:

8. Is the customer complaint pending? ( ) **Yes** (●) **No**

**If the customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.**

9. If the customer complaint is not pending, provide status:
   If status is settlement, complete items 11 and 12;
   If status is arbitration/reparation, complete items 13-19;
   If status is litigation, complete items 20-27.

   ☐ **Closed/No Action** ☐ **Withdrawn** ☐ **Denied**
   ☑ **Settled** ☐ **Arbitration/Reparation** ☐ **Litigation**

10. Status Date (MM/DD/YYYY):
    10/12/2005 (●) **Exact** ( ) **Explanation**
    If not exact, provide explanation:

11. Settlement amount (if settled without arbitration, litigation or reparation): $ 5,235.53

12. Individual Contribution Amount: $ 0.00

**If the matter involves an arbitration or CFTC reparation, complete items 13-19, as appropriate.**

13. Arbitration/Reparation claim filed with (NASD, AAA, NYSE, CBOE, CFTC, etc.) and Docket/Case Number:

14. Date notice/process was served (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

15. Is the arbitration/reparation pending? ○ **Yes** ○ **No**

16. If the arbitration/reparation is not pending, what was the disposition?

17. Disposition Date (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

18. Amount of Monetary Compensation (award, settlement, reparation amount): $

19. Individual Contribution Amount: $

**If the matter involves a civil litigation, complete items 20-27.**

20. Court that case was filed in (include name of Federal, Military, State or Foreign Court, Location of Court - City or County and State or Country, Docket/Case number).

21. Date notice/process was served (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

22. Is the civil litigation pending? ○ **Yes** ○ **No**

23. If the civil litigation is not pending, what was the disposition?

24. Disposition Date (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

25. Amount of Monetary Compensation (judgment, restitution, settlement amount): $

26. Individual Contribution Amount: $

27. If the action is currently on appeal enter date appeal filed (MM/DD/YYYY):

    ○ **Exact** ○ **Explanation**

    If not exact, provide explanation:

28. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the customer complaint, arbitration/CFTC reparation and/or civil litigation as well as the current status or final disposition(s). Your information must fit within the space provided.

---